[Filed January 4, 1892.]

## D. P. THOMPSON *v.* NEW YORK LIFE INS. CO.

AGENCY — SCOPE OF AUTHORITY — COLLATERAL TRANSACTIONS.—Where the scope of an agent's authority to bind his principal by a certain contract is the subject of inquiry in an action, evidence may be given of similar contracts made about the same time by the agent with different parties and approved or adopted by the principal; but if it appear that the principal's conduct in relation to the other contracts proceeded in disaffirmance of the agent's authority to make them, testimony concerning them will not be relevant to the issue on trial.

KNOWLEDGE OF AGENT'S AUTHORITY — RATIFICATION — INSTRUCTION.—When the scope of an agent's authority is known to the party with whom he contracts in the name of his principal, acts of the agent in excess of his authority will not bind the principal. An instruction, however, based on this doctrine, but which excludes from the consideration of the jury competent testimony tending to show ratification of the agent's acts in excess of his authority, was properly refused.

LIFE INSURANCE — ENTIRETY OF CONTRACT — RESCISSION.—*Semble*, that a contract of life insurance is an entire contract the rescission of which by the insurer without cause would entitle the insured to recover the premius paid and interest thereon; *sed quære*, it being doubtful whether the question can be raised under the pleadings in this case.

APPEAL—ASSIGNMENT OF ERROR.—An assignment of error in a notice of appeal must consist of a specification of particulars, so that the adverse party as well as the court may know upon what certain errors the appellant intends to rely.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals. Reversed.

This is an action to recover certain premiums paid by the plaintiff to the defendant for a policy of insurance upon his life with legal interest thereon. Among other things, the complaint states, that one S. L. Dinkelspeil, as agent of and for and on behalf of the defendant, agreed with the plaintiff to insure his life for ten years in the sum of one hundred thousand dollars in consideration of the payment to said Dinkelspeil on account of defendant of the sum of six thousand two hundred and sixty dollars for the first year's premium on such insurance, and the sum of three thousand one hundred and thirty dollars as the premium for each of the second and third years, respectively, and for each of the remaining seven years the sum of six thousand

two hundred and sixty dollars, less a rebate of one-fifth of one per cent upon all the annual premiums received by the defendant on its new business in Oregon, California, and Washington Territory, secured and written in the year 1888, in each of said remaining years, but not to exceed three thousand one hundred and thirty dollars in any of said years; that on June 29, 1888, plaintiff paid the sum of six thousand two hundred and sixty dollars for the first year's premium, and thereafter, on May 7, 1889, in further performance of his contract, he paid three thousand one hundred and thirty dollars for the second year's premium, both of which payments were respectively received and accepted by the defendant with full notice of said contract; that on the seventh day of May, 1890, he tendered to the defendant the sum of three thousand one hundred and thirty dollars as the third year's premium, being then and there ready to make such payment, but that defendant wrongfully refused to receive the same, or to allow plaintiff to make said payment, and notified him that it would not accept the same, and that it would not carry out any part of said contract, nor insure his life for any sum thereunder, nor be bound thereby, and that said defendant rescinded and annulled said contract so far as it had power to do so; that on the seventh day of May, 1890, and thereafter, and up to February 24, 1891, plaintiff was and continued to be able, ready, and willing to pay said sum of three thousand one hundred and thirty dollars as the third year's premium under said contract, but that the defendant refused to receive the same, and that on the twenty-fourth day of February, 1891, the plaintiff rescinded and terminated said contract, and notified the defendant thereof, and demanded from the defendant the return of the sums paid as aforesaid, with interest, etc.

The defendant in its answer denies that Dinkelspeil made the contract alleged, or that he made any such contract for or on behalf of the defendant, or that he had any power or authority to make any such agreement;

denies that plaintiff paid the sum of six thousand two hundred and sixty dollars in part performance of the contract between plaintiff and Dinkelspeil as alleged, and denies that on May 7, 1889, or at any other time he paid the sum of three thousand one hundred and thirty dollars in full for the second year's premium. The defendant admits that it refused to receive the sum of three thousand one hundred and thirty dollars as payment for the third year's premium, but denies that it rescinded or annulled any contract that it ever made with the plaintiff, or by which it was bound, and avers that it has always been ready and willing to perform, on its part, any and every contract that it has made or caused to be made, or any contract of any validity that plaintiff has with the defendant.

For a separate answer, the defendant sets up the policy of insurance, and alleges that all negotiations with reference to the policy made prior thereto, were merged in the contract, requirements, and provisions written in and endorsed upon it, etc., which were duly accepted and agreed to by the plaintiff. For a second separate answer, the defendant alleges that Dinkelspeil had no power or authority to bind defendant by any contract of insurance or any contract with reference thereto; that such power was and is exclusive in the president, vice-president, or actuary of the defendant, residing and being in the city of New York, and that neither of said persons ever made, ratified, or approved any contract, or policy of insurance, or any contract in reference thereto with plaintiff, excepting the one embraced in said policy of insurance.

For a third separate answer, the defendant alleges that Dinkelspeil entered into a secret and confidential agreement with the plaintiff that he was to use his influence and assist Dinkelspeil in obtaining applications to defendant for insurance, and that in consideration thereof Dinkelspeil agreed with the plaintiff, in effect, to divide his commission with plaintiff, and that he would pay to plaintiff as compensation

to him for such services the amounts necessary to make the premiums every year to the company the full sum of six thousand two hundred and sixty dollars; that Dinkelspeil paid to plaintiff three thousand one hundred and thirty dollars as a portion of the second year's premium to be paid by plaintiff to defendant, but denies that any such arrangement was made by Dinkelspeil for or on behalf of defendant. For a fourth separate answer, the defendant sets up that plaintiff has not paid the premiums as required by the terms of the policy, and that in consequence thereof the said premiums have become forfeited to the defendant.

In his replication, the plaintiff, after denying the allegations of the answer, alleges that said policy was delivered to him by Dinkelspeil, together with three written instruments, signed by Dinkelspeil as defendant's agent, purporting to contain the terms of plaintiff's contract with the defendant as to the amount and terms of payment of the annual premiums on said policy according to the previous agreement as aforesaid of plaintiff with Dinkelspeil as the agent of the defendant, and that these instruments were written with the knowledge and consent of the defendant; denies that the power to bind the company was exclusive in the president, etc., or that the policy of insurance contained the only contract ever made by the defendant with plaintiff; alleges that plaintiff's claim of right to pay said second annual premium with said sum of three thousand one hundred and thirty dollars was made, and notified to defendant, and was accompanied by said three written instruments as embodying the terms of said contract with the defendant, and that said payment was accepted and received by the defendant after being notified and fully apprised of said claim, and upon a full examination and consideration thereof and the contents of said written instruments, etc.

Upon the trial, the verdict and judgment went for the plaintiff, from which this appeal is taken.

*Geo. H. Williams,* and *Geo. H. Durham,* for Appellant.

Defendant's motion for a nonsuit should have been allowed upon the ground that the evidence does not support the allegations of the complaint. (*Knahtla* v. *Oregon Short Line, etc. Ry. Co. ante,* 136; *Southwick* v. *Natl. Bank,* 84 N. Y. 429; *Batterson* v. *Ry. Co.* 49 Mich. 184; *Carter* v. *R. R. Co.* 65 Iowa, 287; *Miller* v. *R. R. Co.* 66 Iowa, 364.)

The depositions about other contracts made with parties in California and Michigan by the same agent were improperly admitted in evidence. (*Busby* v. *N. A. Ins. Co.* 40 Md. 580; 17 Am. Rep. 634; *Hawks* v. *Charlemont,* 110 Mass. 113; *Standish* v. *Washburn,* 38 Mass. 238; *Collins* v. *Dorchester,* 60 Mass. 398; *Wood* v. *Ins. Co.* 32 N. Y. 623; *Martinez* v. *Planel,* 36 Cal. 580; *Aldrich* v. *Pelham,* 67 Mass. 511; *Jackson* v. *Smith,* 7 Cow. 718; *Lewis* v. *Smith,* 107 Mass. 338.)

Plaintiff cannot make the defendant company responsible for a secret and collusive agreement between himself and the company's agent. (*Natl. Life Ins. Co.* v. *Minch,* 53 N. Y. 150; *Centennial, etc. Assn.* v. *Parham,* 80 Tex. 518; *N. Y. Life Ins. Co.* v. *Fletcher,* 117 U. S. 519; *Ryan* v. *World, etc. Ins. Co.* 41 Conn. 168; 19 Am. Rep. 490; *Lewis* v. *Phœnix, etc. Ins. Co.* 39 Conn. 100.)

We believe it to be a universal rule, as applied to all other contracts, that if they are partly executed by the parties, and one then fails to perform, the remedy of the other is an action for damages, and not to recover back what he paid, if anything, in part performance of his contract. (*Continental Life Ins. Co.* v. *Hauser,* 111 Ind. 266; *American Ins. Co.* v. *Garrett,* 71 Iowa, 243; *Limerick* v. *Gorham,* 37 Tex. 739; *Cleveland* v. *Fettyplace et al.* 3 Mass. 392; *Hendricks* v. *Coml. Ins. Co.* 8 Johns. 1; *Day* v. *Conn. etc. Ins. Co.* 45 Conn. 480; 29 Am. Rep. 693; *Boland* v. *Whitman,* 33 Ind. 64; *Kellner* v. *Mut. Life Ins. Co.* 43 Fed. Rep. 629; *Lewis* v. *Phœnix, etc. Ins. Co.* 39 Conn. 100; *Waller* v. *Northern Ins. Co.* 64 Iowa, 103; *Clark* v. *Manufacturers' Ins. Co.* 2 Wood. & Minot, 493; *Insurance Co.* v. *Pyle,* 44 Ohio, 30; *New York L. Ins. Co.* v.

*Statham,* 93 U. S. 33; *Leonard* v. *Washburn,* 100 Mass. 254; *Ins. Co.* v. *Roberts,* 4 Duer, 114; *Waters* v. *Allen,* 5 Hill, 421; May on Life Insurance, §§ 567, 589; Bliss on Life Insurance, § 423.)

The letters referred to and alleged in plaintiff's reply as embodying the contract between Dinkelspeil and plaintiff, do not bind the defendant, because they were not submitted to or approved by any officer of the company at the home office in New York. (*Marvin* v. *U. Life Ins. Co.* 85 N.Y. 278; 39 Am. Rep. 657; *Catoir* v. *Life Ins. Co.* 33 N. J. L. 487; *Davis* v. *Ins. Co.* 13 Blatchf. 467; *Amer. Ins. Co.* v. *Hampton,* 54 Ark. 75; *Allen* v. *German Am. Ins. Co.* 123 N. Y. 6; *Merserau* v. *Ins. Co.* 66 N. Y. 279.)

The plaintiff is chargeable with notice, by the application he signed for the policy, that Dinkelspeil had no power to bind defendant by the contract which he made with plaintiff for a rebate upon the premiums contrary to the terms of the policy. (*Chase* v. *Ins Co.* 20 N. Y. 55; *Gladding* v. *California Ins. Co.* 66 Cal. 6; *Morse* v. *Ins. Co.* 21 Minn. 407; *Golden* v. *Northern Ass. Co.* 46 Minn. 471; *Willcutts* v. *Ins. Co.* 81 Ind. 300; *Shuggart* v. *Ins. Co.* 55 Cal. 414; *Enos* v. *Ins. Co.* 67 Cal. 621.)

When a trial court charges the jury upon a matter which is material to the cause, and upon which there is no evidence, the charge is necessarily erroneous and misleading. (*Breon* v. *Henkle,* 14 Or. 509; *Clement* v. *Boone,* 5 Ill. App. 109; *Woodward* v. *O. R. & N. Co.* 18 Or. 299.)

*Watson, Hume & Watson,* and *W. W. Thayer,* for Respondent.

Rulings upon general objections, although excepted to, cannot be assigned as errors in the appellate court; and the objection to evidence or instructions as incompetent, irrelevant, or immaterial, without indicating why, is general within the rule. (*Miller* v. *Wade,* 87 Cal. 410; *Thayer* v. *Marsh,* 75 N.Y. 342; *Kinyon* v. *Palmer,* 20 Ia. 138; *Gillespie* v. *Smith,* 29 Ill. 473; 81 Am. Dec. 328; *Dickerson* v. *Turner,* 15 Ind. 4; *Glawson* v. *Wiley,* 35 Ala. 328; *Fulton* v. *Bayne,* 18 Tex. 56;

*Powers* v. *McKenzie*, 90 Tenn. 169; *Swift* v. *Mulkey*, 17 Or. 533; *Dale* v. *Purvis*, 78 Cal. 113.)

Assignments embracing more than one ground of error cannot be regarded on appeal. (*Oldfield* v. *N. Y. & H. R. Co.* 14 N. Y. 314; *Hughes* v. *Galveston & C. Ry. Co.* 67 Tex. 595; *Ruby* v. *Von Valkenberg*, 72 Tex. 459; *Cullen* v. *Drane*, Tex. 10 S. W. Rep. 720; *Howell* v. *Mexico Cattle Co.* 73 Tex. 612; *Leekins* v. *Nordyke*, 66 Iowa, 471; *Kirk* v. *Litters*, 71 Iowa, 71; *State* v. *Harbach*, 78 Iowa, 475; *Stevens* v. *City of Minneapolis*, 42 Minn. 136; *Anthony* v. *Jillson*, 83 Cal. 296; *McCormack* v. *Phillips*, 34 N. W. Rep. 61; *Russell* v. *Rosenbaum*, 24 Neb. 769; *Sanford* v. *Gates*, 38 Kan. 405; *Johnson* v. *McCulloch*, 89 Ind. 270; *Walter* v. *Walter*, 117 Ind. 247.)

The nature and extent of an agent's powers at a given date may appear just as satisfactorily from his acts toward third parties as in any other way, and a single transaction may furnish all the proof required. (*Wilcox* v. *Chicago, etc. R. R. Co.* 24 Minn. 269; *Houghton* v. *Maurer*, 55 Mich. 323; *Gallinger* v. *Lake Shore Traffic Co.* 67 Wis. 529; *Turnbull* v. *Northwestern Terra Cotta Co.* 46 Minn. 513; 49 N. W. Rep. 229; *Cain Bros. Co.* v. *Wallace*, 46 Kan. 138; *Lovell* v. *Williams*, 125 Mass. 439; *Hosmer* v. *Groat*, 143 Mass. 16.)

The agent had the apparent authority to make the agreements for rebates in definite amounts, and applicants dealing with him on the faith of such apparent authority are entitled to protection. (*Insurance Co.* v. *Wilkinson*, 13 Wall. 231; *Hardwick* v. *State Ins. Co.* 20 Or. 547.)

The facts alleged in the complaint, and admitted by the answer, show a justifiable rescission by respondent, and assent thereto on the part of the appellant. And where a contract is rescinded by the party entitled thereto, it matters not how, nor for what cause, he may recover back whatever he has paid under it. (Bishop on Contracts, §§ 682, 684; *Bartlett* v. *Drake*, 100 Mass. 176; 97 Am. Dec. 92; 1 Am. Rep. 101; *Herman* v. *Haffenegger*, 54 Cal. 161.)

The contract for life insurance is indivisible. (*N. Y. Life Ins. Co.* v. *Statham,* 93 U. S. 24; *People* v. *Security L. etc. Co.* 78 N. Y. 124; 34 Am. Rep. 522; *McKee* v. *Phœnix I. Co.* 28 Mo. 383; 75 Am. Dec. 129; *Hedden* v. *Griffin,* 136 Mass. 229; 49 Am. Rep. 25; *Fisher* v. *Hope M. L. I. Co.* 69 N.Y. 161; *Norton* v. *Gleason,* 61 Vt. 474.)

LORD, J.— From this statement of the pleadings, it will be noted that there are presented mainly three issues of fact: First, whether Dinkelspeil made the agreement with the plaintiff for the rebates on annual premiums on behalf of the company; second, whether he had authority to make such agreement as the agent of the company; and, third, whether such agreement was ratified by the company.

There are numerous assignments of error, and of those relied upon for a reversal, several involve the same question, and relate to the ruling of the trial court allowing the depositions of certain witnesses residing in California and Michigan to be read. To understand the nature and force of these objections, it will be necessary to outline a general statement of the facts. It appears from the record that Dinkelspeil was employed by the company for the period of ten years, and from the time of his entry into its service until the expiration of such term, his authority as agent for the defendant remained the same. During the latter part of his term of service, he came out to the Pacific coast as agent for the defendant for the purpose of securing life insurance for it. At that time, the defendant's business had been established here for many years, with Alex. G. Hawes, as its general agent for the coast, and F. E. Thayer, as its general agent for Oregon. Under these agents the company had an efficient corps of local solicitors, who received their directions from and reported to them.

It is noticeable that Dinkelspeil in the discharge of his agency under his commission, whatever it was, neither took any directions from nor made any report to either of them, but sent the applications he secured and the premiums collected directly to the home office in New York

City, and the policies issued thereon were delivered to him
at the home office, and by him countersigned and trans-
mitted directly to the applicants. Neither Hawes nor
Thayer assumed any control of his actions, but vouched
for his agency when referred to them. To the plaintiff as
to others he represented himself as specially authorized by
the company to obtain a limited number of large policies
on special terms as to amounts and payments of annual
premiums, and exhibited his written commission which he
carried, from the company's officers, under its seal, and
which upon examination the applicants believed conferred
such authority upon him. This instrument was not pro-
duced nor was any attempt made by the company to prove
its contents. Dinkelspeil first came to San Francisco and
commenced operations there, and in the space of a few
months he secured the applications of several persons for
policies of one hundred thousand dollars each, and upon a
basis of a reduction or rebate on annual premiums. During
this time Hawes was the general agent of the company,
met Dinkelspeil, and knew he was taking life insurance
applications for the company under a special commission,
and, when applied to, assured parties that he was the com-
pany's agent for that purpose.

In the latter part of June of the same year, Dinkelspeil
came to Portland and secured applications from the plaintiff
Thompson and others for one hundred thousand dollars
each, in the same manner and upon the same terms, and
Thayer likewise vouched for his authority whenever applied
to for information upon the subject. About January, 1889,
he commenced similar operations in Detroit, Michigan,
and succeeded in a few months in obtaining the applica-
tions of a number of persons for large sums. Like means
were employed, and like terms were given in these cases as
in those before referred to, the general agent of the state for
the defendant conducting himself in a manner somewhat
similar in the particulars already mentioned.

As alleged, plaintiff's agreement with Dinkelspeil was

that he should pay six thousand two hundred and sixty dollars for the first premium, three thousand one hundred and thirty dollars for each of the next two, and six thousand two hundred and sixty dollars for each of the next seven, less a reduction or rebate of one-fifth of one per cent on all moneys colleeted by appellant on policies issued in the year 1888 in California, Oregon, and Washington, not exceeding one-half of said annual premiums. The plaintiff paid Dinkelspeil the first premium of six thousand two hundred and sixty dollars in Portland on the twenty-ninth day of June, 1888, and on the twenty-sixth day of July, 1888, he received his policy through the postoffice at Portland. Enclosed in the same envelope were two letters from Dinkelspeil, as agent, addressed to the plaintiff. The first was as follows:

"OFFICE OF S. L. DINKELSPEIL, SPECIAL AGENT,
"NEW YORK LIFE INSURANCE CO., ETC.

"*D. P. Thompson, Esq., Portland*—DEAR SIR: On the payment of your premium, on May 7, 1889, and May 7, 1890, on policy No. 287,311, issued upon the life of yourself, I will allow the sum of thirty-one hundred and thirty dollars on each payment when made as above. This is strictly confidential.
                          "S. L. DINKELSPEIL, Agent."

The next, omitting formal parts, which were like the preceding, stated: "Beginning May 7, 1891, and on the payment of your annual premiums thereafter on policy No. 287,311, issued upon the life of yourself, you will be entitled to a rebate of one-fifth of one per cent upon all the annual premiums written, accepted, and paid for to the company on its new business written in Oregon during the year 1888; it being understood and agreed that this rebate shall not exceed one-half of your annual premium. This contract and policy is strictly confidential," etc.

On the day the plaintiff received the policy and the accompanying letters, he addressed a letter to Dinkelspeil

at New York City, acknowledging the receipt of his life
insurance policy, but calling his attention to the fact that
he was entitled to a rebate of one-fifth of one per cent, not
alone on the new business in Oregon, as stated in his letter,
but "our agreement was California, Oregon, and Washing-
ton, not to exceed one-half of the annual premium. Please
make the correction," etc.

Dinkelspeil replied, saying that "my personal agreement
for one-half of your premiums for the second and third
years, if you will remember, was for all compensation due
you under the contract for those two years, and my sending
to you the contract upon your territory was simply a mat-
ter of form. And I have no objections to including as I do
now, California, Oregon, and Washington Territory in that
agreement."

About the tenth of April, 1889, the plaintiff received a
postal card from the company's home office, signed by its
president, Wm. H. Beers, notifying him that the annual
premium on his life policy would fall due on the seventh
day of May, 1889, but not stating the amount. The plaintiff
immediately addressed a letter to the company, acknowl-
edging the receipt of the notice, but saying: "Will you
inform me at once what the amount of said premium is? I
obtained said policy through the agency of Mr. S. L. Din-
kelspeil, and he has sent me his personal agreement, which
you can ascertain from him. Please answer at once," etc.

On the eighteenth day of April, 1889, the home office
telegraphed agent Thayer at Portland to get a copy of
Dinkelspeil's agreement with the plaintiff and Dinkel-
speil's letter of the third of August, 1888, and forward the
same to it. The plaintiff furnished the copies, and Thayer
forwarded them, and they were received at the home office
on the twenty-sixth day of April, 1889. Soon afterward
Thayer was directed from the home office, as we shall
explain more fully hereafter, to accept three thousand one
hundred and thirty dollars from the plaintiff and deliver a
receipt in full for the second premium. When the third

annual premium became due, the plaintiff offered to pay
three thousand one hundred and thirty dollars therefor,
according to his agreement with Dinkelspeil, and insisted
upon being allowed to do so, but the defendant refused to
receive it, and disclaimed being bound by such agreement.

It will be observed that the fact that Dinkelspeil was an
agent of the company was not disputed, but the scope and
extent of his agency was the important question in issue.
For the purpose of showing Dinkelspeil's dealing with
other parties, under a similar state of facts, involving like
authority as agent for the defendant, and its conduct in
relation thereto, the plaintiff offered in evidence the depo-
sitions of Charles F. Crocker, John F. Merrill, George T.
Hawley, G. W. McNear, and J. A. Hooper.   These witnesses
resided in California.   The deposition of Crocker showed
that he took a policy on his life for one hundred thousand
dollars, but was only to pay two thousand five hundred
dollars for the first premium, and four thousand three
hundred and forty dollars each for the next three.   He
testifies that he sought to ascertain whether the company
recognized his policy as valid, and accepted the terms upon
which Dinkelspeil delivered it, and that he had received
favorable assurance that the company did recognize and
respect his policy;  that the special terms on which he
received it at the time consisted only of a lower annual
rate of premium than is customary for such a policy, and
the delivery of it to him with the first annual premium paid
of two thousand five hundred dollars.   Merrill took a policy
for a like sum, and paid the first premium, four thousand
nine hundred and fifty dollars, and entered into a contract
with Dinkelspeil for a rebate on future premiums.   The
company refused to recognize this contract of Dinkelspeil's
as to a rebate on premiums, but settled with him after-
wards, the company refunding to Merrill the sum of three
thousand eight hundred and seventy-eight dollars and forty
cents, thus retaining one thousand three hundred and fifty-
one dollars and sixty cents.   Hawley likewise took a policy

for one hundred thousand dollars, paid the first premium, four thousand nine hundred and fifty dollars, and entered into a contract with Dinkelspeil for a rebate on future premiums, but the company refused to recognize it, and afterwards settled, the company refunding to Hawley three thousand five hundred and ninety-four dollars, and thus retaining one thousand three hundred and fifty-six dollars. Likewise, in the cases of McNear and Hooper, with some slight deviations as to the sums.

The objection against these depositions, which the court permitted to be read to the jury, is, that they are irrelevant, or evidence of collateral facts only, and as such they could afford no reasonable presumption or inference that Dinkelspeil had the authority to make the alleged contract on behalf of the company, or that the company was in any way bound by it. The argument is, that as these California contracts for a rebate on the premium were rejected by the company, no presumption can arise that a similar contract made between the plaintiff and Dinkelspeil was the contract of the company, or that it was bound by it; that the company had the right to recognize or to refuse to recognize any contract that Dinkelspeil might make in California, or elsewhere, and "to settle them as they pleased, and that what they did there, is not competent evidence in this case." The objection urged against the admission of these depositions, upon the facts as disclosed by this record, may be well taken, but it may be doubted whether the latter part or clause of the argument can be sustained.

If the contracts Dinkelspeil assumed to make with these parties for a reduction or rebate on the premiums were plainly recognized by the company, or his authority unequivocally acknowledged, it would be evidence tending to prove his agency to make other similar contracts. Such a recognition of his agency would make them valid contracts, and in full force and effect. His agency to make a contract for a rebate on premiums as alleged was the important matter in issue to be proved. If shortly prior thereto,

Dinkelspeil had made such contracts for a rebate with parties in California, and the company, as his principal, plainly recognized his authority in the premises, these facts would be evidence tending to prove his agency to make other similar contracts or other contracts for a rebate .on premiums. As the contract involved is such a contract, such evidence would have a tendency to show his authority to make it.

In *Wilcox* v. *R. R. Co.* 24 Minn. 270, it was held that a single act of an assumed agent, and a single recognition of his authority by the principal, if sufficiently unequivocal, positive, and comprehensive in their character, may be sufficient to prove agency to do other similar acts. In that case, the contention was that there must be more than one act of the alleged agent, and one recognition of the act by the principal, before a presumption would be raised that a person is authorized to act for another. But GILFILLAN, /C. J., declared otherwise, saying that "a single act of the agent and a recognition of it by the principal may be so unequivocal and of so positive and comprehensive a character as to place the authority of the agent to do similar acts for the principal beyond any question. The value of such proof does not depend so much upon the number of acts as upon their character."

In *Lovell* v. *Williams*, 125 Mass. 439, it was held in an action against a married woman for goods sold and delivered to her husband and used on a farm owned by her, on which she and her husband resided, that evidence that she paid a bill to another merchant for similar goods bought by her husband during the time covered by the account in suit is competent on the issue, whether or not the husband acted as her agent in carrying on the farm. "It would be difficult to prove agency," as CAMPBELL, J., said, "if the acts of the agent accepted by the principal should be excluded." (*Haughton* v. *Mauser*, 55 Mich. 326.)

We think, therefore, if Dinkelspeil made such contracts for rebates on premiums, and the company had accepted

them, or recognized his agency to make them, that such facts would be competent as evidence tending to prove his agency to make the contract in issue, which is a similar contract. But the facts, as disclosed by the depositions, show that the company refused to recognize these contracts as to rebates on premiums, or any contract made by him which differed from the contracts as set forth in the applications of the insured and the policies issued to them. It is true, out of the misunderstanding engendered, legal proceedings were threatened and begun, but the settlements, after effected, in no way recognized the validity of such cont. s or Dinkelspeil's authority as agent to make them; bu., as we understand, they were settled on the basis of the policies issued to them for the risk incurred during their continuance. If the company had recognized Dinkelspeil's authority to make them, such contracts would now be in force; their rejection of them, and repudiation of his authority to make them, is inconsistent with any recognition of their validity.

There is no pretense that the plaintiff had any knowledge of these contracts which Dinkelspeil had made in California, and it is not possible that they could have influenced his conduct in his dealings with him. It is not perceived, then, how these transactions or contracts made in California, which the company refused to recognize, but distinctly repudiated, can afford any reasonable presumption or inference that a similar contract between the plaintiff and Dinkelspeil was made on behalf of the company, or in any way bound it. In none of the depositions is there any evidence tending to show that the company gave any positive or·unequivocal recognition of Dinkelspeil's agency to make contracts for rebates on premiums, or of the validity of such contracts; but on the contrary, his acts in the premises, as well as the contracts themselves as to rebates, are distinctly repudiated and rejected; and as a consequence, there is nothing in these transactions which tends to show his agency to make the contract in dispute.

It is next objected that the court erred in allowing the plaintiff to read to the jury the depositions of D. M. Ferry, W. C. McMillan, and J. W. Fales, and the exhibits which accompany them.   These witnesses reside in the state of Michigan, and it appears that Dinkelspeil made an agreement with each of them for a rebate on the premiums, based upon a percentage on its receipts from its business in that state.   In regard to these agreements, Dinkelspeil wrote a letter to the home office substantially to the effect that he had agreed with Mr. Ferry to allow him a reduction of the second and succeding year's annual premium, as they are paid, an amount equal to one-tenth of one per cent of the annual premium paid, on the new insurance written by the company in the state during the time therein specified; that the allowances under the agreement were to be charged to his account and deducted from any sum or sums that might become due him under his contract, and requesting, if the arragement were satisfactory, to indorse the approval of the company on and return this letter to him for delivery to Mr. Ferry.   The president of the company, Mr. Beers, approved the letter, and so indorsed it.

The letters written by Dinkelspeil to the home office with reference to the policies of McMillan and Fales are substantially to the same effect.   It appears that Mr. Fales wrote a letter to the company relative to the arrangement Dinkelspeil had made with him.   The answer of the president of the company, after stating that his letter was obviously not a reply to any letter written by the company, but as obviously a reply to a communication from Dinkelspeil, among other things states in effect that the company does not accept the premiums otherwise than in cash, and that the premium was paid to the company by Mr. Dinkelspeil in cash; that the company has no knowledge of any note given by him asked to be returned, but that if Dinkelspeil held his note that was a mattter between them; that before approving the letter, Dinkelspeil had given the company the necessary security to secure his agreement, and

that it would not have been approved by the company under any other conditions.    These facts and circumstances tend to indicate that the company was to receive the full amount specified in the policies, and not the amount to be paid by those parties under their respective contracts with Dinkelspeil; that the company only approved the letter, stating the nature of their agreement for a percentage rebate on its business under the circumstances indicated.    However this may be, the fact that Dinkelspeil wrote to the president of the company for his approval and indorsement of these percentage rebates, plainly indicates that he had no authority to make such contracts, or to bind the company by any special contracts about rebates, without its consent.

Bearing in mind that these contracts were made nearly a year after the contract with the plaintiff, how can the depositions and letters in respect to them, when they show a want of authority in Dinkelspeil to make rebate contracts without the consent of the company, have any tendency to show Dinkelspeil's agency, or his authority to make, on behalf of the company, the rebate contract alleged?    We think the objections to these depositions and letters were well taken, and that the court erred, for the reasons stated, in allowing them to be read to the jury.

The next objection, as we shall consider it, involves several assignments of error, and exceptions taken to others given.    Among the instructions refused, asked by the defendant, are: (1) "You are instructed that upon the pleadings and evidence in this case the defendant is entitled to a verdict." (2) "If the jury believe from the evidence in this case that the contract between Dinkelspeil and plaintiff for a rebate upon the premiums named in the policy was a personal agreement, and not the contract of the defendant corporation, they must find a verdict for the defendant." (3) "The letters referred to, and alleged in plaintiff's reply as embodying the contract between Dinkelspeil and plaintiff, do not bind the defendant, because they were not submitted to or approved by any officer of the

company at the home office in New York."   (4) "The plaintiff is chargeable with notice by the application he signed for the policy that Dinkelspeil had no power to bind the defendant by the contract which he made with the plaintiff for a rebate upon the premiums, contrary to the terms of the policy."   (5) "The only contract binding on the defendant is the contract contained in the policy of insurance, including plaintiff's written application for such policy."

As to the first of these instructions, it is sufficient to say that there was no error, for the reason that there were facts appearing in evidence which were for the consideration of the jury.   As to the other instructions, it is admitted, to some extent, that they were given by the trial court in its general charge; but the complaint is, that they were so mixed up with modifications and qualifications as practically to impair or defeat their directness and force.

It appears from the charge, that the trial court specifically instructed the jury that these letters indicated upon their face that "they were not the contracts of the company"; that "this was a matter which required the assent of the company"—"some authorization in the first instance to bind the company"; that "this upon its face was a private and personal contract between Dinkelspeil and the plaintiff; and if that was all of it, I should say that the company was in no way bound by the stipulation contained in these papers."   The court then proceeded to say:   "But, although this might have been a contract private and personal between Thompson and Dinkelspeil as agent, yet the company might make themselves a party to it and become bound by its terms.   This they could do by having first authorized such a paper to be made.   They could do it by ratifying it after ascertaining that such a contract had been made between Dinkelspeil and Thompson.   They could also do it by receiving the benefits of such a contract, and recognizing it as received in pursuance of that particular arrangement—that is, by direct authorization, by ratifi-

cation or by accepting the benefits of the contract, the company could become bound. And it is for you to inquire, in this case, what is the fact in regard to that."

It thus appears that the instructions numbered two and three were given, but that four and five were not given as asked, for the reason that to have so given them would have had the effect to exclude from the consideration of the jury the evidence which the plaintiff had introduced, and which he was entitled to have submitted to the jury, of authorization and ratification of the contract. It is true, that the depositions of the witnesses from California and Michigan, which were allowed to be read to the jury as evidence tending to prove Dinkelspeil's authority to make contracts for rebates on premiums, have been held by us to be error; but without expressing any opinion whether there was any other evidence upon this point, it is enough to say, that there was some evidence, as we shall presently show, introduced by the plaintiff tending to show ratification upon the part of the company which the plaintiff was entitled to have submitted to the jury, but which the giving of instructions four and five as asked would have had the effect to exclude from their consideration. Hence it was not error to refuse them.

As ratification is a vital point in the case, the mistake of counsel is, that they proceed upon the hypothesis that there is no evidence of any nature or description tending to show ratification upon the part of the company, and hence their further objection, earnestly urged, that there is no evidence to sustain that portion of the charge of the trial court as last stated above. The record discloses that the plaintiff received a notice from the home office of the company, signed by its president, informing him that the annual premium on his policy would fall due on the seventh day of May, 1889, but the notice did not state the amount. Plaintiff immediately addressed the letter, already stated, to the president, inquiring the amount of the premium, and stating that Dinkelspeil had sent him his persona

agreement, which the company could ascertain from him. Two days after, the home office telegraphed to Thayer at Portland to obtain a copy of Dinkelspeil's agreement with the plaintiff and his letter of the third of August, 1888, and forward them to the company.   Plaintiff furnished the copies, and Thayer, the general agent, forwarded them to it, so that the company then at least became fully acquainted with the nature of the alleged contract, and its conduct thereafter becomes important as bearing on the question of ratification of the same.   Shortly after these papers were sent to the company, Thayer was directed to accept three thousand one hundred and thirty dollars from the plaintiff in full for the second premium, and deliver him a receipt in full for the second premium six thousand two hundred and sixty dollars, and the money was paid by plaintiff ($3,130), and the receipt for six thousand two hundred and sixty dollars delivered accordingly on the seventh day of May, 1889, at Portland, Oregon.   The plaintiff, in testifying in respect to these facts, says:   "Mr. Thayer came to me with a receipt for six thousand two hundred and sixty dollars.   He said: 'Now you pay me three thousand one hundred and thirty dollars, and I will give you your receipt; that is the one agreed on by Dinkelspeil with you.' I told him I was prepared to do it.   He says: 'It is a mere matter of form in this matter in order to close up our books and make it all appear correct; and this is a matter we do not care to go before the public; you give me a receipt for this matter for the balance.'   I said, so I get my receipt, that is all right.   He says: 'I am prepared to give you a receipt in full,' which he did, and he executed to me a counter receipt, I paying one-half of the amount, as agreed by Dinkelspeil."   He further testifies, in substance, that in signing the receipt presented to him by Thayer, he did not understand that he was receiving any money from Dinkelspeil; that Thayer just proposed to give him a receipt for the full amount and to take a receipt from him to settle up the matter on their books.

It is not possible to state all or more of the evidence, but this is sufficient to indicate that there was some evidence tending to show that the company, with a full knowledge of all the facts as to the agreement for rebates on premiums made by its agent Dinkelspeil with the plaintiff, accepted the sum of three thousand one hundred and thirty dollars from the plaintiff in payment of the second premium. And if it were accepted under the circumstances indicated, and the jury believed it, the same was evidence tending to prove ratification. It is true that the defendant introduced evidence explaining and contradicting the testimony for the plaintiff, and tending to show that the company never ratified or approved such a contract, or that it received the sum of three thousand one hundred and thirty dollars in pursuance of that arrangement, or that any other or less sum than six thousand two hundred and sixty dollars was paid to the company for the second year's premium as shown by the receipt of plaintiff to Dinkelspeil for three thousand one hundred and thirty dollars "as commissions or rebates on second annual premium," etc., indicating, as defendant claims, that of the six thousand two hundred and sixty dollars the sum of three thousand one hundred and thirty dollars was furnished by Dinkelspeil in pursuance of the personal agreement between the plaintiff and Dinkelspeil, and consequently that the company could not nor did not understand or recognize that the three thousand one hundred and thirty dollars paid by the plaintiff was to be in full payment of the second year's premium, but while this is the company's side of it we are only concerned with showing that there was some evidence tending to show ratification in support of that portion of the charge excepted to. The truth is, the trial court, recognizing the importance of the question of ratification under the issue, has taken the pains to instruct the jury fully and clearly upon this aspect of the question, as demanded by the different phases of the evidence pre-

sented by the parties.  Nor to the larger portion of the
charge in this particular, is there any exception.

The next objection is to the following instruction:  "It is
claimed by the counsel on the one side that this form of
agreement was adopted by the company for purposes of
its own, as an arrangement by which certain advantages
or supposed advantages might be gained, without spread-
ing the transaction upon the records of the company, and
that the company by its executive officers, did authorize
just such a thing to be done; just such a form of contract
to be made as Dinkelspeil and Thompson entered into, but
understood and intended that it should be the contract of
the company; that the company would abide by it and
fulfill its terms.  You will inquire by your verdict from
all this testimony whether that is the fact or not."  We
doubt whether there is any evidence sufficient to sustain
this portion of the charge in its full signification.  We
recall the evidence of Thompson of what Thayer said con-
cerning the receipt already alluded to, but we doubt whether
the inference to be drawn from that circumstance would
justify the charge as given  As the case is to be tried over,
the error to which this portion of the charge is subject may
be easily avoided.

As to the next portion of the charge excepted to, which
is quite long, and is omitted, we think there is some evi-
dence to sustain it, and that the objection as taken cannot
be sustained.  We have not noticed the motion for nonsuit,
for the reason enough has already been stated to show that
the facts appearing in evidence require that the case should
be submitted to the jury.  The argument as to the con-
clusive effect which should be given to the application and
policy, overlooks some important facts, and wholly ignores
the theory upon which the action was brought and tried.
That theory is, that this rebate contract alleged was the
contract of the company,—that they authorized and ratified
it,—and in that view and the issue made upon it, the argu-
ment cannot be sustained.  To hold that the plaintiff was

bound by their terms, and give the effect to them claimed, would be to ignore the issue and the evidence of the plaintiff in support of his contention.

The next objection relates to the remedy sought by this action, and arises out of an instruction asked and refused, and an instruction given by the court to the effect that plaintiff might recover the premium paid by him, with legal interest, upon proof of the facts alleged. The instruction asked and refused was to the effect, that as the plaintiff was insured for a year for the sum specified, he could not recover the premium paid by him in this action. The argument, however, addressed to us, does not go to this extent. It only claims that the plaintiff, having received a consideration for the premiums which he paid, cannot recover back the entire amount of the premiums paid, with interest; that all the plaintiff could recover, in any event, would be the amount of damages which he has sustained by the alleged violation of his contract. On the other hand, it is urged that the plaintiff contracted for the payment of a stipulated sum to be paid at his death, and that to secure this he agreed to make ten annual payments; that the contract on the company's part was executory and would have remained so until his death; that the defendant gave the plaintiff nothing but its promise to pay the stipulated sum on the happening of his death, and that before that occurred, and while its engagement was executory, it refused to carry it out; that plaintiff never received any part of what he contracted for, and has nothing now that he can restore. Hence the plaintiff claims, as the defendant refused to be bound by the agreement, and to recognize his rights under it, he had a right to rescind it, and to recover back what he had paid under it with interest. There is undoubtedly some conflict in the authorities as to the proper remedy to be pursued in such cases, as is admitted by the learned counsel for the company.

Mr. Justice BRADLEY stated in *New York Life Ins. Co.* v. *Statham*, 93 U. S. 30, that the annual premium is not paid

solely for an insurance for the year in which it is paid, but each premium is part consideration of the entire insurance for life.   He said: "The contract is not an assurance for a single year, with a privilege of renewal from year to year, by paying the annual premium, but it is an entire contract of assurance for life, subject to discontinuance and forfeiture for non payment of any of the stipulated premiums. * * * Each installment is, in fact, part consideration of the entire insurance for life.   The value of assurance for one year of a man's life when he is young, strong, and healthy is manifestly not the same as when he is old and decrepit.   There is no proper relation between the annual premium and the risk of assurance for the year in which it is paid."   It is true that Mr. Justice STRONG expressed a different view, saying:   "The applicant for insurance, by paying the first premium, obtains an insurance for one year, together with the right to have the insurance continued from year to year during his life, upon payment of the same annual premiums, if paid in advance."

Which of these is the true theory, we are not so well advised as we would like.   As noted, contracts for life insurance differ from contracts for any other class of insurance.   In these the risk for one year is practically the same as another, and of equal value to the assured.   Under such contracts, there is more reason for the claim that courts of equity may apportion the premiums paid with the benefits received, where they terminate before the time agreed upon by the parties.   But if life insurance contracts are to be treated as indivisible, and the consideration for the premiums paid and to be paid is an entirety for the reason suggested, they would not seem to come within the reason of the equitable rule, or at least ought not to be applied to a party having the right to rescind.

However this may be, it was held in *McKee* v. *Phœnix I. Co.* 28 Mo. 383; 75 Am. Dec. 129, that if an insurance company should wrongfully refuse to receive the premiums due on a life policy, the assured may treat the policy as at an end

and recover back all the money paid under it for premiums; and this case discloses that the court thought that this might be a very inadequate measure of damages, remarking that "the mere return of the premiums with interest would not be the standard in all cases. In many it would be very unjust, especially after the policy had continued for years and the period of existence had consequently been shortened." This case is admitted to be in point. (*Hedden* v. *Griffin,* 136 Mass. 229; 49 Am. Rep. 25; *Fisher* v. *Hope M. L. I. Co.* 69 N. Y. 161; *Norton* v. *Gleason,* 61 Vt. 474. As at present advised, and in view of the unsettled state of authorities, we are not prepared to say there was any error, especially in consideration of the fact that it is quite doubtful whether the question can be raised under the pleadings.

There is an objection raised by the plaintiff to several of the assignments of error in the notice of appeal for want of sufficient specification. The statute requires that the notice of appeal "shall specify the grounds of error upon which the appellant intends to rely upon the appeal." (Hill's Code, § 527.) As illustrative of several of such assignments of error in the notice of appeal, the following will serve as a specimen: "Said court erred in allowing plaintiff to read to the court and jury the deposition of J. A. Hooper, and in overruling the defendant's objection thereto." By this assignment there is a general allegation of error, but it does not specify in what that error consists, or the grounds of error upon which the defendant as appellant intends to rely. Various grounds of error might be specified, any one of which, under such a general assignment, might be urged as error in allowing the deposition to be read to the jury, and none of them the one which was passed upon by the trial court and excepted to. The ground of error is not specified by the assignment. The adverse party knows that the appellant assigns that the trial court erred in allowing the deposition to be read, but whether this was because the deposition was irrelevant as evidence or incompetent for want of proper certification, or

other grounds of error which might be specified, he cannot say from such a general assignment. In *Swift* v. *Mulkey,* 17 Or. 534, in passing upon the necessity of a specification of error in the notice of appeal, STRAHAN, J., said: "Since the enactment of the present code, where an assignment of error in the notice of appeal is necessary, it must consist of a specification of particulars, so that the adverse party, as well as the court, may know upon what particular errors he intends to rely on the appeal." As if to emphasize its importance and necessity, he said: "The proper rule of practice is, that the appellant must put his finger on the error complained of. He cannot be permitted to make a general assignment, and then upon the argument select some particular portion of the charge which is claimed to be within the general statement." Of similar purport is the language of WORKS, J., in *Miller* v. *Wade,* 87 Cal. 410, in which he says: "The assignment of error is the pleading which points out the particular question raised and passed upon in the court below, and presented to this court for review. The bill of exceptions is intended to present the facts and the exception which sustains the point made and thus reserved for our determination. If this were not so, this court would be compelled, instead of looking to the assignments of error for the question presented, to search the whole transcript to find them; opposing counsel would have no means of knowing what points would be relied upon until the briefs were filed in this court, and questions could be urged here that had never been called to the attention of the court below."

Clearly, then, under our statute it is not enough to simply state in an assignment of error that the court erred in doing so and so, or in failing to do so and so; but the appellant must point out or specify the ground of error upon which he intends to rely. Tested by this principle, the assignment, and those like it, were insufficient. Each of them relates to and covers all objections to the reading of a particular deposition, but none of them specify a single

ground of error. But as the defects in these assignments are sufficiently specified by others in which the error relied upon is raised, we have not felt bound to consider them, and have only adverted to them as due to the able argument presented against them, and to attract attention to the importance of complying with the statute in this regard.

The judgment is reversed and a new trial ordered.