MUTUAL RESERVE FUND LIFE ASS'N v. FERRENBACH.

(Circuit Court of Appeals, Eighth Circuit.    March 20, 1906.)

No. 2,189.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SECOND APPEAL.

A question once determined by an appellate court will not be re-examined on the same facts and under the same conditions, on a second appeal or writ of error in the same cause.

2. INSURANCE—CANCELLATION OF POLICY—DAMAGES.

An action was brought by the insured to recover damages for the wrongful cancellation of a life insurance policy for alleged nonpayment. of a premium after the policy had been in force for a number of years. The premiums were in the form of assessments covering only the current death losses of the company, with an added sum for expenses. At the time of the cancellation plaintiff was an invalid and incapable of obtaining other insurance. He died pending the action, and it was re-vived by his executor. *Held*, that the measure of damages was the amount of the policy, less the cost of carrying it to maturity had it re-mained in force, all the amounts entering into the calculation to be valued on a 6 per cent. basis as of the date of cancellation.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

James C. Jones (Jones, Jones & Hocker and George Burnham, Jr., on the brief), for plaintiff in error.

R. P. Williams (C. B. Williams, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

HOOK, Circuit Judge.    This is the second appearance of this cause in this court.    When it was first tried in the Circuit Court, a verdict was directed in favor of the association, upon the ground that the policy of insurance had been lawfully declared to be forfeited for the failure of the insured to pay a premium when due, and judgment was rendered accordingly.    The judgment was reversed, and it was held that the position of the association was untenable.    Ferrenbach v. Life Ass'n, 59 C. C. A. 307, 121 Fed. 945.    The facts of the case appear in the opinion reported as above, and we need not again recite them further than to say that the forfeiture was declared during the lifetime of Lambert, the insured.    The action was brought by Lambert, and upon his death during its pendency it was revived in the name of Ferrenbach, as executor.    The petition is in two counts; the first seeks a recovery of all premiums paid, with interest added, and the second asks generally for damages in the sum of $5,000 for wrongful forfeiture.    In the second trial the Circuit Court directed a verdict in favor of the executor for the full amount of the premiums paid and interest thereon.

The association now contends: First, that under the conceded facts in the case, which are the same as at the first trial, it lawfully de-clared a forfeiture of the policy, and the plaintiff is therefore not entitled to recover; second, that, even if its first position be not sus-

tained, the measure of damages applied by the Circuit Court and which controlled the verdict of the jury, is not the correct one.

The law of this case, so far as it concerns the right of the association to forfeit the policy, was announced by this court upon the return of the first writ of error, and we will not re-examine the question when the cause again comes before us upon the same facts and under the same conditions. Guarantee Co. v. Phenix Ins. Co., 59 C. C. A. 376, 124 Fed. 170.

As to the measure of damages: The judgment now under review is for all premiums paid by Lambert between the time his policy was issued and the time of its wrongful cancellation, with interest. The word "premiums" is used in aid of brevity, and it includes the admission fee and all annual dues and mortuary assessments. The peculiar features of this case withdraw it from the operation of the rules which most frequently find application. In a policy issued upon what is termed the level premium plan, the insured has an equity arising from an excess of premiums paid above the current cost of insurance to the company. Under such a plan the natural premiums for the respective years, which steadily and progressively increase as the insured advances in age, are so adjusted and averaged among the years of his expectancy of life that they become flat or level, the same in amount in the beginning as at the end. In such a case it is apparent that the earlier level premiums contain an appreciable excess over the actual cost of insurance, which decreases, however, with the progress of the years. So it is said that in a level premium policy the insured has an equity, the excess of payment above cost of insurance, which constitutes an element of damage resulting from wrongful cancellation. Such was the policy in the case of Lovell v. Insurance Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423. But the Lambert policy is of an entirely different character. It was issued upon the assessment plan, and each year's premiums represented the actual current cost to the association of carrying the insurance risk. There was no excess over cost out of which an equity or value could arise. Insurance Co. v. Roth, 59 C. C. A. 63, 122 Fed. 853.

Modern times have witnessed the addition of many new features to policies of life insurance resulting in premiums of greater amount and consequently in an increased equity or value in the policies themselves, and the particular rules for ascertaining the loss sustained by policy holders through the wrongful cancellation of their policies must vary as the characters of the policies themselves vary. In some cases much may also depend upon the physical condition of the insured, whether he remains an insurable risk or not, and whether insurance of like character and value to that canceled can be obtained in some other responsible company, and what the cost may be. But in every case of this character the dominant idea is compensation—reimbursement for the actual loss sustained—and the measure of recovery which fits nearest and most closely thereto is the one that should be adopted. The award should be precisely commensurate with the injury suffered, neither more nor less. Dow v. Humbert, 91 U. S. 294, 299, 23 L. Ed. 368.

There are presented in the case at bar all the data essential for an accurate ascertainment of the damage sustained. We have the character of the policy and its date and amount; the dates and amounts of all premium payments to the association during the 16 years in which the policy was in force; the date of the breach of contract by the association; the physical condition of the insured at the time of such breach and the fact that he was not then an insurable risk, and that he could not then obtain insurance elsewhere; the date of his subsequent death; and, finally, the amounts and dates of maturity of all premiums he would have been required to pay to the association between the time of the cancellation of his policy and the time of his death, had the policy continued in force. And the question is, what rule of admeasurement of damage sustained by the wrongful cancellation should be adopted to give just, full, and adequate compensation, and nothing more or less?

It should be observed that the asserted ground of forfeiture, failure to pay a premium when due, is not one that struck at the validity of the policy at the date of its issue. It is not claimed that the policy was void from its inception because of fraud or other reason. Its validity when issued was recognized, and continued so for 16 years. During all of that period the insured received benefit from his payments and enjoyed the protection afforded by the policy. It was at the end of that period that the association repudiated the further existence of its obligation. Again, it should be observed that both parties have treated the policy as having been terminated on May 1, 1899; the insured claiming that it was then wrongfully done, and the association that it was done rightfully. The action being for damages, the time as of which they should be ascertained is the day the wrong was done and the damage inflicted.

There are quite a number of authorities which announce the rule applied by the Circuit Court in the case at bar, and allow a recovery of all of the premiums paid by the insured prior to the time of the wrongful cancellation. Supreme Council v. Black, 59 C. C. A. 414, 123 Fed. 650; Supreme Council v. Daix, 64 C. C. A. 435, 130 Fed. 101; Van Werden v. Assurance Society, 99 Iowa, 621, 68 N. W. 892; People's Mutual Insurance Fund v. Bricken, 92 Ky. 297, 17 S. W. 625; American Life Ins. Co. v. McAden, 109 Pa. 399, 1 Atl. 256; Union Central Life Ins. Co. v. Pottker, 33 Ohio St. 459, 31 Am. Rep. 555; Insurance Co. v. Garmany, 74 Ga. 51; Thompson v. Insurance Co., 21 Or. 466, 28 Pac. 628; Braswell v. Insurance Co., 75 N. C. 8; Lovick v. Association, 110 N. C. 93, 14 S. E. 506; Burrus v. Insurance Co., 124 N. C. 9, 32 S. E. 323; Strauss v. Mutual Reserve Fund, 126 N. C. 971, 36 S. E. 352, 54 L. R. A. 605, 83 Am. St. Rep. 699; McKee v. Insurance Co., 28 Mo. 383, 75 Am. Dec. 129; McCall v. Insurance Co., 9 W. Va. 237, 27 Am. Rep. 558; Niblack on Benefit Societies, § 280.

Some of these proceed upon the assumption that prior to the time of wrongful cancellation the insured or beneficiary never received any benefit from the policy, and, on the other hand, that the insurance company gave nothing of value for the premiums paid to it. There is

involved in this a misconception of the theory and business of life insurance. Not only is the protection of insurance of actual, positive value while it endures, but the cost to the insurer of carrying the risk can be ascertained almost to a mathematical certainty. There is no more reason for saying that an insured has nothing of value until he dies, than there is for saying that one is not benefited by a policy of fire insurance unless his house is destroyed by fire. An insurance company that conducts its business upon the plan that the assumption of a risk costs it nothing before death of the insured will likely meet with speedy and disastrous insolvency.

Once conceding value in insurance protection to the insured, and also cost to the association in carrying the risk, the recovery of all of the premiums paid for such protection is obviously inadmissible. In this aspect the case is analogous to one in which a gas company has contracted to furnish gas to a householder for a period of years. Surely no one would contend that a breach by the company of its contract would authorize a recovery by the consumer of rates paid in the past. Suppose one is let into the possession of a house under a contract of lease, with a purchase clause, providing that he should pay to the owner $15 per month for a specified term of years, of which $10 should be considered as rental, and the remaining $5 with interest accumulations as applicable to a fixed purchase price which would be satisfied by the monthly payments if made during the entire period. Could it reasonably be said that, if the lessor wrongfully canceled the contract and resumed possession, the lessee, upon electing to sue for damages instead of for specific performance, could recover the entire amount of payments made by him, notwithstanding he had peaceably enjoyed the use and occupancy of the premises for the period during which his payments were made? It seems to us that such questions should be viewed from an entirely different standpoint.

The rule in North Carolina, announced in Braswell v. Insurance Co., supra, is that:

"The measure of damage would be the amount necessary to enable the plaintiff to obtain another policy, if so minded, which of course would be much higher in respect to the premium, inasmuch as he is several years older than he was when he first obtained the policy; but the case need not be complicated by this consideration, as the plaintiff is content to take back his money with interest, and be quits of all further connection with defendants."

The first part of this quotation announces the proper rule in some cases, especially where the insured is able to obtain other insurance, but the observation concerning the recovery of the premiums does not seem to us to sustain any legal or definite relation to the measure first announced. What a plaintiff would be content to receive should not be established as a legal measure of damage in any case. The premiums paid and interest might be altogether inadequate to compensate, and again they might be largely in excess of full compensation, and naturally that measure would be rejected by the plaintiff in the former case and accepted in the latter, if he were given the choice. A measure of damage is a rule of law and should not be determined by the option or self-interest of a party to a controversy.

There are several reasons which we think demonstrate that the rule

of the above cases is inadmissible, bearing in mind that the end desired is compensation to the insured . for loss sustained and not the punishment of the company. Under some circumstances such a rule would work great injustice to the insured, and under others great injustice to the insurer. An example of the former would be presented, if the insured, having paid but one year's premium upon a policy issued for his entire life, should become so affected with disease that he could not procure insurance elsewhere. It would be manifestly unjust to restrict his recovery for a wrongful cancellation of his policy to the amount of the single premium paid. On the other hand, if a policy upon the assessment plan has endured for many years, the assessments or premiums might, with interest, aggregate a sum largely in excess of the principal sum of the policy. It is true that the injured party may have a choice of remedies—an action for damages or a suit to prevent a wrongful cancellation, and he might thereby be enabled to protect himself against an inadequate admeasurement of his loss. The illustrations show, however, that the rule is not a true one. When the insured elects to sue for damages, he should not be given a choice of measurements leading to widely different results. There are other authorities which are fully in harmony with the views we have expressed, and which reject the rule allowing a recovery of all premiums' paid. Lovell v. Insurance Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423; Insurance Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789; Ebert v. Mutual Reserve, 81 Minn. 116, 83 N. W. 506, 834, 84 N. W. 457; Mailhoit v. Ins. Co., 87 Me. 374, 32 Atl. 989, 47 Am. St. Rep. 336; Insurance Co. v. Houser, 89 Ind. 258; Id., 111 Ind. 266, 12 N. E. 479; Standley v. Insurance Co., 95 Ind. 254; Phoenix v. Baker, 85 Ill. 410; Day v. Insurance Co., 45 Conn. 480, 29 Am. Rep. 693; Union Central v. McHugh, 7 Neb. 66; Speer v. Ins. Co., 36 Hun (N. Y.) 322; Insurance Co. v. Weck, 9 Ill. App. 358; Bliss on Life Insurance, § 415; May on Life Insurance, § 569; Cooke on Life Insurance, § 104; In re Albert Life Ins. Co., L. R. 9 Eq. 707, 716; In re English Assurance Co., Holdich's Case, L. R. 14 Eq. 72.

In the Lovell Case, supra, Mr. Justice Bradley, in speaking of the complainant's claim, said:

"He demands a return of all the premiums paid by him, with interest, less the amount of his premium note; and that said note shall be delivered up to be canceled. But we do not think that he is entitled to a return of the full amount of his premiums paid. He had the benefit of insurance upon his life for five years, and the value of that insurance should be deducted from the aggregate amount of his payments."

In some of the cases sustaining a recovery for all of the premiums paid the Lovell Case was distinguished and held inapplicable. Counsel also seek to distinguish it from the case at bar. But the fact remains that there was in that case a wrongful cancellation of the policy by the company, and the insured, as is the case here, regarded it as terminated and sued for damages. We regard the doctrine there announced as precluding a recovery, for the wrongful cancellation of a policy, of that portion of the premiums paid which represents the actual cost of the insurance during the years of its uncontested validity. It is true that the policy there involved was of the level pre-

mium character, but it is also true that that portion of the premiums paid by Lovell which was excluded by the Supreme Court from the recovery is precisely like all of the premiums paid by Lambert. Recovery of the part of the premiums representing the cost to the company of carrying the risk was denied Lovell, because he had received the benefit thereof. If the contention now made is admitted, this anomalous result will ensue: If an insured has paid, as Lambert did, premiums representing only the actual cost of the insurance, he may, upon wrongful cancellation of his policy, recover all of the premiums so paid; but, if the premiums included, as in the Lovell Case, an excess over actual cost, he can recover only such excess.

At the time his policy was canceled Lambert was 72 years of age, a paralytic, and unable to obtain other insurance in any responsible company. For this reason the method adopted in some cases for estimating damages by ascertaining the increased cost of insurance obtained elsewhere cannot be employed. And as his policy had no net value, the measure of recovery in the Lovell Case cannot be used. But the insurance was for the term of Lambert's life, and he had a right to have it remain in force subject to the continued payment of the premiums.

In view of all of the special circumstances of the case, the character of the policy, the physical condition of the insured, and the absence of any measure promising more accurate compensatory results, we are of opinion that the recovery should be for the amount of the policy, less the cost of carrying it to maturity had it remained in force; all amounts entering into the calculation to be valued upon a 6 per cent. basis as of May 1, 1899, the date of cancellation. Lambert died January 25, 1902, before the trial of his action, but had he lived evidence would have been admissible to show the life expectancy of a man of that age and so afflicted. And it is presumable that such evidence would have established the very fact which afterwards appeared. At any rate, death has solved all uncertainty. The policy was for $5,000 and was payable at death. Upon a 6 per cent. basis, the value of that sum on May 1, 1899, the day of the wrongful act of the association, was $4,295.55. The various premiums that would have been paid, had the policy remained in force, similarly discounted and brought back from their respective due dates, aggregate $1,822.25.

The difference between these sums with interest from May 1, 1899, when the damage was sustained, to October 17, 1904, when the judgment was rendered, aggregating $3,283.70, is the proper amount of recovery. The judgment entered was for $4,495.49.

The judgment of the Circuit Court is therefore reversed, and the cause remanded for a new trial, unless the defendant in error, by a proper remittitur filed in the Circuit Court, shall remit from the judgment there entered the sum of $1,211.79 with interest accrued upon the amount so remitted since the date of the judgment, and shall also file a certified transcript of such remittitur in this court within 40 days from the filing of this opinion. If such remittitur and transcript be filed, the judgment as so reduced will be affirmed, at the cost of the defendant in error.