National Union v. Shipley.

## National Union v. Sarah M. Shipley.

1. BENEFICIARY ASSOCIATIONS—*Proof of Service of Assessment Notices.*—Evidence of the secretary of a beneficiary association, whose duty it was to make and mail notices of assessments, as to his methods in preparing and sending the notices, is competent for the purpose of proving the service of such notices, although he may have no distinct recollection of sending the particular notice in question.

2. SAME—*Authority to Make Assessments.*—Section 5 of the act of June 22, 1893, relating to assessment companies (Laws 1893, 119) permits the persons designated in the by-laws of such associations to make calls for assessments upon members of the association and to fix the time and manner for the payment of the same.

3. SAME—*Effect of a Failure to Pay an Assessment.*—The failure by a member of a beneficiary association to pay an assessment legally made upon him, is, *ipso facto*, a forfeiture of his rights in the association.

Assumpsit, on a beneficiary certificate. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding.

Heard in this court at the March term, 1900.   Reversed, and judgment in this court.   Opinion filed October 29, 1900.   Rehearing denied December 24, 1900.

**Statement.**—July 9, 1885, one Joseph E. Shipley, being a member of Stephen A. Douglas Council No. 66, which is a beneficiary society incorporated under the laws of the State of Ohio, received from said society on that day a certificate of insurance executed by the proper officers and under the corporate seal, which, after the formal commencement and conclusion is as follows:

"This certificate is granted upon the express condition that all statements and representations made by said friend in the application to procure membership in said council, and statements made to the medical examiner now on file in the office of the secretary of the senate are true, and that the same are made a part of this contract, and upon further consideration that this friend strictly complies in the future with the laws, rules and regulations controlling said benefit fund, or that shall hereafter be enacted by the senate, to govern said council and fund. If these conditions are faithfully complied with, the senate of the National Union hereby promises and agrees to pay out of its benefit fund to Sarah M. Shipley, wife, $5,000, pursuant to the provisions of the laws of this order governing such fund, upon sufficient proof of the death of said friend, and upon the surrender of this certificate. Provided always that the said friend shall be in good standing in this order at the time of his death."

He paid his dues and assessments from the date of the certificate up to assessments 135 and 136, notice of which was sent to him under date October 10, 1893. He failed to pay these assessments or any subsequent ones, and died November 27, 1894.

His wife, the appellee herein, brought an action of covenant against appellant to recover the amount of said insurance certificate, which was defended by appellant upon the ground that said Joseph E. Shipley, upon due notice of said assessments being given him, failed to pay them or either of them, and by reason of such failure he became and was suspended from said council and said order of the National

National Union v. Shipley.

Union, and thereby forfeited all rights of himself, his family and beneficiary, and he was never thereafter reinstated as a member of appellant.

A trial of the cause before the court and a jury resulted in a verdict for appellant, but a new trial was awarded, and upon a second trial before the court, a jury being waived, the court found for appellee, assessed her damages at $5,957.50, and rendered judgment thereon in her favor against appellant, from which this appeal is taken.

Among other by-laws of the appellant society material to be considered are the following :

## " LAW 1.

### BODIES.

Section 1.    The governing and legislative body of the National Union shall be the senate of the National Union, with powers of self-government, to make laws for the government of the order, to elect officers, defining and prescribing their powers and duties.    The senate shall be the body to which final appeals shall be made, as it may direct or permit.    The senate shall have general control and supervision of the order in all of its branches."

## " LAW 10.

### DUTIES OF THE PRESIDENT OF THE SENATE.

Section 1.    The president of the senate shall preside at all meetings of the senate and enforce all laws thereof; shall have the general superintendence and control of the order while the senate is not in session; shall sign all orders on the treasury drawn in accordance with the laws of the order, and shall sign all documents and papers that require such signature to properly authenticate them.    His correspondence with councils and cabinets, when practicable, shall be carried on through the secretary of the senate, with the senate seal attached.

Sec. 2.    It shall be the duty of, and the president of the senate shall have authority to, decide upon the intent, purport or interpretation of any law or rule of the order; decide upon the authority of any body, officer of any body, or member of the order; decide upon the legality of any act of any body, officer of any body, or member of the order.    Such decisions of the president of the senate shall be binding upon all officers, bodies, officers of bodies, and members of the order, and shall be final, subject only to an appeal to the senate, as provided by the laws of the order."

### "LAW 41.

#### BENEFIT FUND.

Section 1.   All persons, before becoming beneficiary members of the National Union, shall pay to the financial secretary a sum corresponding with the age they have completed, or may complete, during the calendar year in which they are initiated, in accordance with the following table of rates, and shall pay the same sum on each assessment call issued prior to the succeeding first day of January; and on assessments called during each succeeding year thereafter they shall pay a sum corresponding with their ages during each year, until they reach the age of sixty-five years, and thereafter shall pay a sum corresponding with the rate for that age while remaining members of this order in good standing, until they reach the age of eighty years, when no further assessments shall be collected from them, but the benefit certificate of members in good standing who reach that age shall be deemed fully paid up and continued in force so long as said members keep their council dues paid.   The table of assessments is as follows:"

(Here follows a table showing ages and five rates of assessment, according to the amount of the certificate issued and the age of the member to whom issued, the assessment of Mr. Shipley being $3.15, he being of the age of fifty-one years and his certificate $5,000.)

### "LAW 42.

#### COLLECTION OF ASSESSMENTS.

Section 1.   On the tenth day of each month the secretary of the senate shall notify every council to forward immediately to the treasurer of the senate the assessment due from every member initiated before the date of said call, in accordance with a form prescribed by the senate, which shall include a list of all deaths that have occurred subsequent to the last assessment, and direct that an assessment be collected from the members.   Whenever the demands of the treasury require more frequent assessments, the notice issued on the tenth day of the month shall call for two or more assessments; provided, that only the assessment bearing the last number on any such notice shall be collected in advance from new members previous to initiation.

Sec. 2.   Upon the receipt of a call for an assessment, the secretary of the council shall acknowledge the same to the secretary of the senate and immediately notify the financial secretary of the facts set forth in the call.   *   *   *

National Union v. Shipley.

Sec. 8.   The council having been notified by the secretary of the senate that an assessment has been laid, it shall be the duty of the financial secretary to at once notify every member liable to an assessment.   This notice may be by postal card, or in any other form satisfactory to the council, unless otherwise provided by the secretary of the senate. This notice may be mailed to or left at the last known post-office address or residence of a member, or handed to him in person.   Each member shall notify the financial secretary of any change of the address to which such notice shall be forwarded.   If the notice is left at or mailed to the last given or known address of a member, it shall be sufficient notice to him.   Each member shall pay the amount due from him within one month from the date of such notice.

### LAW 43.

SUSPENSION OF MEMBERS FOR FAILURE TO PAY ASSESSMENT.

Section 1.   If any member shall fail to pay to the financial secretary of his council the amount due from him upon assessment within one month from the date of the notice, as provided by law, he shall stand suspended from the council.

Sec. 2.   The financial secretary shall immediately notify the president of the council of the date of the suspension of a member, and the president of the council may announce the suspension at the next meeting of the council for the information of the members of the council.   The failure, however, of the financial secretary to notify the president of the council of the date of the suspension of a member, or the failure of the president to announce the suspension at the next meeting of the council, shall in nowise affect the suspension of a member, but he shall stand suspended upon his failure to pay the assessment, as provided in the last preceding section.

### LAW 44.

RE-INSTATEMENT OF MEMBERS.

Section 1.   Any member who has become suspended for non-payment of assessments, dues or fines, may re-instate himself at any time within one month on payment of all amounts due, together with a fine of twenty-five cents, which fine shall go to the general fund of the council.   The secretary shall at once notify the senate secretary of all such re-instatements; provided, that under no circumstances shall the council receive assessments or dues for any deceased member who was under suspension at the time of

his death, nor shall the receiving of any such assessment or dues by the council render the benefit certificate of such deceased member valid, nor shall it create any liability thereon on the part of the order.

Sec. 2.   Members who have remained suspended for more than one month must make application on a blank prescribed by the senate secretary on which a ballot shall be taken, and a majority vote shall be sufficient to re-instate. If beneficiary members, they must also be re-examined by the medical examiner and approved by the medical director. If they have passed the age of fifty-four and have remained suspended for more than three consecutive months they shall not be re-instated.   All amounts due at the date of suspension and all quarterly dues accruing since that time, must be paid at the time of making application, and in case of rejection the money shall be returned.   The secretary shall forward the application and examination to the senate secretary, and the benefit certificates of such members shall again become valid at the date of the approval of the medical director.

Sec. 3.   The names of members remaining suspended for more than six months shall be stricken from the books, and their membership shall cease; they may rejoin the order as new members, but must pay all indebtedness to their original council that existed at the time of suspension."

Mr. Shipley made application to become a member of the Union April 26, 1885, which is signed by him and contains, among other things, the following:

"I do hereby consent and agree that any untrue or fraudulent statement made above, or to the medical examiner, or any concealment of facts by me in this application, or my suspension, or expulsion from, or voluntary severing my connection with the order, shall forfeit the rights of myself and my family, or beneficiary, to all benefits and privileges therein.   I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules and usages of the order now in force, or which may hereafter be adopted by the same."

CHAS. J. KAVANAGH and PECK, MILLER & STARR, attorneys for appellant.

CLARK VARNUM, attorney for appellee.

Mr. Justice Windes delivered the opinion of the court.

Two principal contentions are made for appellant, viz.: First, that the court erred in the exclusion of certain evidence tending to show notice of assessments to Mr. Shipley; and, second, that the court erred in not finding for appellant, because it is claimed that the record shows that Mr. Shipley had ceased to be a member of appellant in good standing, thereby suspending himself by operation of the by-laws, and that he died while so suspended.

The evidence excluded was a part of the testimony of the witness Fred C. Rehm, who was the assistant of the financial secretary of the appellant during the time when it is claimed that notices of the assessments which Mr. Shipley failed to pay were sent to him, and whose duty it was to mail such notices. After the witness testified as to his knowledge of making out the notices and his duty as to mailing, he was asked the following question, viz.: "Now, you may describe the methods used in making out and filling up and preparing for sending these notices of assessments," to which the court sustained an objection, and said: "It is not the method that he adopted in other cases or generally that would control in this, but what he did in this;" whereupon counsel for appellant offered proof of the uniform method in that regard, which the court refused to receive, and also asked the following question of the witness, viz.: "Well, you may tell us what he did in this case in the matter of filling out the notices?" which was objected to, the objection sustained and an exception preserved to both the rulings of the court.

We are of opinion that the learned trial judge was in error in these rulings. 1st Greenleaf on Evid., Secs. 38 and 40; 1st Taylor on Evid., Sec. 181-2; 2nd Daniel on Nego. Instruments, Sec. 1054; Knickerbocker, etc., Co. v. Pendleton, 115 U. S., 339-47; Goetz v. Bank of Kansas City, 119 U. S. 551-60; Equitable Life, etc., v. Frommhold, 75 Ill. App. 43-54.

But it is said that this excluded evidence is as to the method or custom of a private individual, and that the rule

applied to banks or public offices is not applicable. The rule is applied to the usual course of business of private individuals in their offices and business. 1st Greenleaf on Evid., Sec. 40, and cases cited, including Dana v. Kemble, 19 Pick. 112; 1st Jones on Evid., Sec. 46; see, also, cases cited in the Pendleton case, *supra*, pp. 345–6; 1st Taylor on Evid., Sec. 181.

We are, however, of opinion that this cause need not be reversed and remanded for the error in excluding this evidence, as the evidence in the record, in our opinion, clearly preponderates in favor of appellant that Mr. Shipley received notice of the assessments in question. The financial secretary of appellant, George E. Rehm, testified that he sent notices of these assessments to Mr. Shipley and gave in detail the method pursued by him in making out and sending the assessment notices to members, and said that it was his uniform practice, after the notices were made out *seriatim* from the membership roll in regular order, and the envelopes addressed in the same way, to place the notices in the envelopes, after which they were sealed, stamped and mailed, and that he did this with assessments Nos. 135 and 136, and that these assessment notices contained in an envelope were addressed to Joseph E. Shipley, 1499 Washington Boulevard, Chicago, Ill., duly stamped and mailed, and that they had never been returned to him. On cross-examination he admitted that he had no personal recollection of each individual assessment notice sent out, and that his testimony regarding sending the notice in question to Mr. Shipley was based entirely upon his custom and not upon any distinct or independent recollection of his own, and that he thought in the majority of ·cases he didn't personally see the letters or envelopes containing the notices put in the letter box or post-office, but that they were turned over to his clerk for mailing. He also testified that he heard from other members of the council as to assessments Nos. 135 and 136, who came in and paid the same to him.

The witness Fred C. Rehm corroborated his brother as to the general custom of making out and mailing notices,

but said that he did not have a distinct recollection as to notices made out in October, 1893.

The witness Ryce testified to a conversation which he had with Mr. Shipley between the meetings of Council 66, in December, 1893, and January, 1894, in which the witness said that Mr. Shipley told him, in response to an inquiry by witness as to whether he would be at the following meeting of the council, that he, Shipley, had been suspended, and when asked with regard to his re-instatement, Shipley said, "I received notice from Rehm if I didn't go to the doctor by a certain time that I would be dropped; I must go and be examined to get in now," and when the witness spoke further with Mr. Shipley about his re-instatement and coming to the meeting, and that he did not like to see old members drop out, Shipley replied: "I don't know—I can't keep it up. I'm going to drop it."

The only evidence as against what is above recited on behalf of appellant, is that of appellee, who testified that there was a private mail box, which was locked, on the back of her residence where letters that were sent to the house were delivered; that the mail was always delivered there; that she usually took the mail out of the box; that Mr. Shipley usually left before the mail came in the morning, and that when he came home at night it would be after the last delivery of the mail; that the mail was taken out of the box probably as soon as it came, and that she did not remember seeing any mail or a letter like the one claimed to have been sent with the assessment notice. In view of this evidence, we think there is no reasonable doubt but that Mr. Shipley received the assessment notice in question. Moreover, it was sufficient if the notice was mailed to Shipley at his last known address, as provided by the by-laws, which was done.

The only remaining question to be considered is as to whether he was in good standing and not rightfully suspended at the time of his death.

It is claimed for appellee that the assessment was not regularly levied by the proper officers of the appellant, but this is not tenable.

As we have seen, when Mr. Shipley made application to become a member, he agreed that his suspension or expulsion from, or voluntary severing his connection with the order should forfeit his rights and those of his beneficiary to all benefits and privileges therein, and that he would conform in all respects to the laws, rules and usages of the order then in force and which might thereafter be adopted by the same. The certificate which he received provides that the statements and representations made in his application are made a part of that contract, and in addition requires that he should comply with the laws, rules and regulations controlling the benefit fund of appellant, or that should thereafter be enacted by the senate, which is the governing body of appellant.

By law 41, section 1, Mr. Shipley was required to pay at each assessment the sum of $3.15. By law 42 the secretary of the senate was required to notify each council on the tenth day of each month to forward to the treasurer immediately the assessment of every member due before the date of such call, and direct that an assessment be collected from the members and that " whenever the demands of the treasury require more frequent assessments, the notice issued on the tenth day of the month shall call for two or more assessments." Section 2 provides that on receipt of a call for an assessment the secretary of the council shall acknowledge the same to the secretary of the senate, and immediately notify the financial secretary of the facts set forth in the call; and section 8 makes it the duty of the financial secretary to at once notify every member liable to an assessment, which notice may be by postal card or any other manner satisfactory to the council, unless otherwise provided by the secretary of the senate, and " may be mailed to or left at the last known post-office address or residence of a member or handed to him in person. * * If the notice is left at or mailed to, the last given or known address of a member, it shall be sufficient notice to him. Each member shall pay the amount due from him within one month from the date of such notice."

Law 43, section 1, is as follows :

" If any member shall fail to pay to the financial secretary of his council the amount due from him upon assessment within one month from the date of the notice, as provided by law, he shall stand suspended from the council."

Law 44 provides as to the method of re-instatement of members who have become suspended, and provides that as to members remaining suspended for more than six months their membership shall cease.

The evidence fully establishes that notices of assessments 135 and 136 were sent out, as provided by these by-laws, and as we have seen, such notice was received by Mr. Shipley. It either reached him through the mail or in some other way, and he knew that because he had failed to pay the assessments thereby called for, which is also clearly established by the evidence, he was suspended. This suspension lasted for more than six months after he failed to pay the assessments, and under law 43 he stood suspended within one month from the date of the notice, October 10, 1893, and under law 44, his membership in the order ceased, and he thereby, under the terms of his application and his certificate, forfeited all his rights and those of his beneficiary in the benefit fund of appellant. By his failure to pay these assessments, he was *ipso facto* suspended. Hanson v. Supreme Lodge, etc., 40 Ill. App. 219, and affirmed in 140 Ill. 306; Royal League v. Moerschbaecher, 88 Ill. App. 89, and cases cited; Ry. Passenger, etc., Assn. v. Leonard, 82 Id. 214; Bridges v. National Union, 76 N. W. Rep. 270.

But it is said that the assessments were irregular; that there was no authority in the by-laws by which two assessments could be called at once. This contention is fully answered by by-law 42, which allows two or more assessments to be called when the demands of the treasury require more frequent than monthly assessments, and by the evidence, which clearly establishes that the demands of the treasury on account of death losses, required that two assessments be made.

It is further claimed that the secretary of the senate had

366    APPELLATE COURTS OF ILLINOIS.

VOL. 92.] Chicago Trust & Savings Bk. v. Chicago Title & Trust Co.

no right to call any assessment, and laws 1 and 10 are referred to as establishing this contention. Law 1 empowers the senate of the National Union to make laws for the government of the order. The statute of this State with regard to beneficiary societies, section 5, act of June 22, 1893, Rev. Stat. Chap. 73, permits this to be done. The by-laws of the order made pursuant to this power authorizes the secretary of the senate to make the call of assessments that was made. Bridges case, *supra*.

Being of opinion that the evidence in the record clearly shows that appellee is not entitled to recover, the judgment of the Circuit Court is reversed and judgment will be entered in this court in favor of appellant for its costs in this and in the Circuit Court. Reversed, and judgment in this court for appellant.