### HELEN E. BRIDGES v. NATIONAL UNION.

August 4, 1898.

Nos. 11,119—(242).

**Co-operative Life Insurance—Rules of Association.**
Certain parts of the rules or "laws" of defendant association, a life insurance company organized in the state of Ohio on the co-operative or assessment plan, construed. *Held*:

**Secretary of Senate—Duty.**
1. Under these "laws," that it is the duty of the secretary of the "senate," on the 10th day of each month, to direct every council that at least one assessment shall be collected from each member of the council; and, whenever the condition of the general treasury demands more revenue in anticipation of death claims, where deaths have actually occurred among the members, which condition the secretary is to ascertain, he may direct that two or more assessments shall be collected.

**Same.**
2. The duty of the secretary as to assessments in defendant association is fully performed when he forwards to each council a notice or direction that one or more assessments shall be collected.

**Notice of Assessment—Presumption.**
3. Such notice or direction is presumptive evidence that the assessments therein required to be collected are necessary to meet death claims.

**Finding of Court.**
4. The trial court was fully warranted in finding from the evidence

that plaintiff's deceased husband had, in his lifetime, been duly notified by mail of certain assessments made against him.

## Date of Notice.

5. Under the "laws," members were required to pay assessments within one month from the "date of the notice." The notice in question bore date April 10, 1896, and the member was, according to its terms, required to pay within one month from the "date of the notice." It was mailed in the city in which the member resided April 20. *Held*, on the facts here, that it is immaterial whether the month commenced to run on the day of the date of the notice, or the day it was mailed, or the day when it was, or in due course of mail should have been, received.

## G. S. 1894, ¿ 3311—Notice of Assessment—Purpose of Assessment.

Whether G. S. 1894, § 3311, which requires that each notice of assessment made upon the members of an association of this character "shall truly state the cause and purpose of such assessment," applies to an association incorporated under the laws of another state, is not determined; but it is *held* that this requirement was not intended to affect notices where the assessment could be for one cause only, and for but one single purpose, such as the establishment of, or to add to, a fund to be used for the payment of death claims, and for no other purpose, there being no other fund out of which such claims could be paid.

## Upon Reargument.

### December 6, 1898.

## Notice of Assessment—Date of Notice—Notice Invalid—Benedict v. Grand Lodge Overruled in Part.

The "date" of a notice, served by mail, of an assessment in a mutual insurance association, when the amount of the assessment is, by the rules of the association, to be paid within a certain number of days from the "date of the notice," is not the date printed in the notice itself, but is the day on which the notice is mailed, or is or should be received by the member in due and regular course of mail; and as to this we do not decide. In such a case the printed date of the notice was April 10, 1896, and by the terms thereof the member was notified that the time for payment "expires May 10, 1896," and, further, that "You will stand suspended if not paid on or before that date." The notice was mailed to the member April 20, and was, or should have been, received by him on April 21. Under the rules of the association, the member had one month from the date of the notice of assessment within which to pay, and therefore, in this case, had until May 20 or until May 21, 1896. *Held*, that the notice was insufficient and invalid, and that a forfeiture of the member's

rights under his certificate of membership could not be based thereon. And, in so far as this is in opposition to what was said in Benedict v. Grand Lodge, 48 Minn. 471, the latter case is overruled.

Action in the district court for Hennepin county to recover $3,000 on a benefit certificate. The cause was tried before Jamison, J., without a jury; but after the resignation of that judge the cause was submitted to McGee, J., on a deposition and the stenographer's report of the evidence. The court found in favor of defendant, and from a judgment entered in pursuance of the findings plaintiff appealed. Reversed on reargument.

*Wm. H. Hallam,* for appellant.

The conditions under which respondent was authorized to call assessments are not shown to have existed at the time of the assessments in the payment of which it is claimed the deceased made default. See Scheufler v. Grand Lodge, 45 Minn. 256; Backdahl v. Grand Lodge, 46 Minn. 61; American v. Helburn, 85 Ky. 1; Pacific v. Guse, 49 Mo. 329; American v. Schmidt, 19 Iowa, 502; Atlantic v. Fitzpatrick, 2 Gray, 279; Shea v. Massachusetts, 160 Mass. 289; Mutual v. Jarvis, 22 Conn. 133, 148; Mutual Res. F. Life Assn. v. Hamlin, 139 U. S. 297; 2 Joyce, Ins. 1290, 1291, 1319.

Respondent's evidence affirmatively shows that the double assessment in question was not directed or levied by the proper authority. The assessment was called by the secretary, without the direction of any one. There is nothing to show that the senate or president had knowledge of it. This was not the act of the respondent, and it imposed no liability on the members. Agnew v. Ancient, 17 Mo. App. 254; American v. Helburn, supra; Underwood v. Iowa, 66 Iowa, 134; Grand v. Bagley, 164 Ill. 340; Bates v. Detroit, 51 Mich. 587.

The notice of the alleged assessment, from the senate secretary to the councils, was fatally defective, because it did not include any list of deaths that had occurred since the last assessment, and because it did not comply with the requirement of G. S. 1894, § 3311, that such notices shall truly state the cause and purpose of the assessment. 2 Bacon, Ben. Soc. § 379; 2 Joyce, Ins. § 1328; Miner v. Michigan, 63 Mich. 338.

*Keith, Evans, Thompson & Fairchild* and *Charles J. Kavanagh,* for respondent.

Assessments may be called in assessment orders to pay anticipated losses, unless prohibited by charter or by-laws. Kelly v. Troy, 3 Wis. 229. The presumption is that the demands of the treasury did require the two assessments levied. Demings v. Supreme, 131 N. Y. 522.

Under the laws of respondent and the contract between it and Bridges, the secretary was the proper officer to call assessments. 1 Bacon, Ben. Soc. § 86; Backdahl v. Grand Lodge, 46 Minn. 61. The notice of assessments 182 and 183 was not inoperative because of the provisions of G. S. 1894, § 3311. Respondent levied assessments only on beneficiary members, and assessments were for the sole, specific purpose of establishing and maintaining the "benefit fund." To a member of the association, therefore, a notice calling for an "assessment" definitely advised him that the money was called to supply the "benefit fund" of the association with needed money. Smith v. Covenant, 16 Tex. Civ. App. 593; McDougall v. Provident (N. Y.) 32 N. E. 251; Hanson v. Supreme, 140 Ill. 301; Karcher v. Supreme, 137 Mass. 368.

The misstatement of the time within which the assessments were to be paid was immaterial. Benedict v. Grand Lodge, 48 Minn. 471.

COLLINS, J.

The defendant is a mutual benefit association, engaged in the business of insuring the lives of its members upon the co-operative or assessment plan. Its home office is at Toledo, Ohio. Its governing and legislative body is known as the "Senate," and it has numerous subordinate councils, located in Minnesota and other states. The association and its members are governed by a code of regulations known as the "laws" of the order, each of these laws being numbered. Dues and assessments are collected from the members. The dues are a fixed quarterly charge for the payment of expenses. Assessments are collectible only for the payment of death losses. Under the laws and practice of the defendant, they are to be called on the 10th day of the month, as the demands of the treasury to pay death losses require. The fund raised by

assessments is known as the "Benefit Fund." It is available for no other purpose than the payment of death losses, and no other fund is available for that purpose. The amount of one assessment is fixed according to the age and rate of the member; but the number of assessments to be called in any given month depends upon the demands of the treasury, as determined by the properly constituted authority. The sum to be assessed upon the members at any call, therefore, is indeterminate, and must be fixed as a prerequisite to each assessment. Notice of every assessment must be given by the financial secretary of each subordinate council to its members; and, if the assessment be not paid by each member within one month from the date of the notice, he stands suspended from all benefits, subject to reinstatement on certain specified conditions.

The plaintiff's deceased husband became a member of this order in April, 1890, receiving a benefit certificate in the sum of $3,000, payable to plaintiff. It is admitted that Mr. Bridges paid all demands made upon him by the defendant until April, 1896, when, it is claimed, he failed to respond to a notice mailed on April 20, informing him that he must pay two assessments within one month, or stand suspended from all benefits from and after that date. No subsequent notice of any assessment was ever sent to Bridges. Defendant claims to have sent a notice on May 20 that he had been suspended on May 10, and stating the terms upon which he could be reinstated. There was no law of the order providing for this notice of suspension. Defendant's sole defense is the nonpayment of this alleged double assessment. Mr. Bridges died November 28, 1896. It is admitted that proofs of death by the plaintiff were waived, and that, if entitled to any relief against the defendant, she is entitled to recover $3,000 and interest. A trial being had, the court made its findings and order for judgment in favor of the defendant. From the judgment entered according to this order, the plaintiff appeals.

On the hearing of the appeal, plaintiff's counsel argued with zeal and ability a large number of his 38 assignments of error, but of these very few need special consideration. The undertaking to pay the benefit was based upon the proviso that the member, Mr.

Bridges, should be in good standing at the time of his death. So, the real inquiry arises out of an alleged double assessment made April 10, 1896, numbered 182 and 183, notice of which was mailed April 20, it is claimed, by the financial secretary of the local council to which Mr. Bridges belonged, to Mr. Bridges, in the same city. Briefly stated, the validity of these assessments and the sufficiency of the notice are the questions to be determined; for, without going into details, we are of the opinion that proof of the mailing of this notice was so well established by the testimony that a finding to the contrary would have been wholly unwarranted. This testimony was much stronger and more conclusive than that relied upon and held sufficient in Backdahl v. Grand Lodge, 46 Minn. 61, 48 N. W. 454. Under the terms of law 42, mailing of the notice only was required to be shown.

1. As to the validity of the two assessments made April 10. The plan of organization (law 34, § 4) required a deposit of the amount of one assessment from every charter member, and it also required (law 35, § 9) a prepayment of the amount of one assessment by each applicant before his initiation. The amount of each assessment, original or current, is made to depend upon the age of the applicant, or member, being arbitrarily fixed according to age in law 41. The general governing body is styled the "Senate," and has a secretary and treasurer. Law 42, § 1, which has undoubtedly been the cause of much discussion, is as follows:

"On the tenth day of each month the secretary of the senate shall notify every council to forward immediately to the treasurer of the senate the assessment due from every member initiated before the date of said call, in accordance with a form prescribed by the senate, which shall include a list of all deaths that have occurred subsequent to the last assessment, and direct that an assessment be collected from the members. Whenever the demands of the treasury require more frequent assessments, the notice issued on the tenth day of the month shall call for two or more assessments; provided, that only the assessment bearing the last number on any such notice shall be collected in advance from new members previous to initiation."

This section must be construed with reference to the plan and purpose of the organization, and in connection with other pro-

visions of the laws. It is plainly made the duty of the senate secretary, on the 10th day of each month, to require of the subordinate bodies, by a notice, that they remit to the senate treasurer all amounts paid in as assessments by members initiated since the last notification, a month before, and to include with this notice a list of all deaths which have occurred since the last assessment. The secretary shall also, on the same day, direct that at least one assessment shall be collected from each member; and, whenever the condition of the general treasury demands more revenue, he shall direct that two or more assessments be collected. This section imperatively requires the performance of these independent duties, and, if the secretary should fail to perform as to one, such failure could not affect the obligations of the members arising out of his performance of the other.

The principal question here is, did the secretary properly and lawfully direct the assessments numbered 182 and 183? In form he did, but counsel argues—First, that he was wholly without authority so to do in any case; and, second, that, if he had such authority in respect to death claims established by proof, it was not within his power to assess in anticipation of proofs, although deaths among the members had actually occurred of which official notice had been received. As before stated, the duties of the secretary are plainly defined, and the laws imposed upon him an obligation to make monthly assessments. The subsequent sections in law 42, in which are detailed the duties of the officers of the subordinate bodies, clearly indicate the manner in which the machinery of collection is set in motion; and they also emphasize the assertion that death claims must be anticipated and provided for. Indeed, this is directly shown from an examination of other provisions of the laws. The object of the association, as stated in these laws, is to establish a benefit fund, from which a certain sum of money shall be paid to some one dependent upon him when sufficient proof is made of the death of a member in good standing. Such payment is to be made within 90 days after proofs of death are filed and approved, and this payment is in no manner made to depend upon the collection of any assessment for that special claim.

An association of this character could not establish a benefit fund, nor could it pay within a certain number of days after proof, nor could it even transact business successfully, if, after death claims have been established, provision for payment thereof must be made by assessments upon members. From all of the provisions of the laws under which the association acts, it is clear that the secretary is to make all assessments, and that, in a reasonable manner, he may anticipate and provide for the payment of claims for deaths which have occurred; and the presumption is that the condition of the treasury demanded that two assessments be made on April 10, 1896. It was the duty of the senate secretary to ascertain this condition, and to act as might be required. The notice sent out by him was presumptive proof that two assessments were necessary. Demings v. Supreme Lodge, 131 N. Y. 522, 30 N. E. 572.

In addition to this, it may be stated that on the trial of this case there was evidence as to the state of the general treasury sufficient to justify a finding that it was necessary to collect an amount equal to two or more assessments to meet and liquidate claims fully established by proofs, and then due and payable.

2. In accordance with the custom, blank notices were furnished by the senate secretary every time an assessment was called, and were sent out to the secretary of each council, whose duty it was to fill out names and amounts, and mail one to each member. The notice printed for assessments 182 and 183 bore date April 10. That sent Mr. Bridges was mailed to him on April 20, and, according to its terms and in conformity with the laws, he was required to pay within one month from "the date of the notice," and in default of payment he would stand suspended from membership. Suspension inevitably followed a failure to meet assessments, no action of any kind being required, although upon the trial it was shown that notice of suspension was mailed to Mr. Bridges by the local secretary on May 20, 1896. Every suspended member could reinstate himself within one month by paying all delinquent amounts and a fine of 25 cents. After the expiration of one month of suspension he might be reinstated upon application.

On the facts of the case, we need not determine whether the month within which Bridges was required to pay commenced to

run on April 10, the day specified in the notice as the date of the same, or on April 20, the day on which the notice was mailed by the secretary of the council to which he belonged. If, as counsel contends, the law is (see 2 Bacon, Ben. Soc. § 382) that the "date of the notice" of assessment in one of these fraternal associations is not the date written or printed on the notice itself, nor is it the date of mailing, but, in fact, is the date when such notice is, or, in due course of mail, should be, received, there was default in this case, and Bridges stood suspended; for six months passed between the date of this notice (no matter whether it was April 10 or April 20) and the day of his decease, all of which period of time he was delinquent. As was said in Benedict v. Grand Lodge, 48 Minn. 471, 51 N. W. 371, it makes no practical difference in this case, and would not generally, in view of the fact that there remained the right to reinstate at the option of the member suspended. It must not be forgotten that this is not a case where the member died within the payment period, as claimed, or where it is contended that, in making payment or in an attempt to reinstate after suspension, he was within time.

3. By G. S. 1894, § 3311, it is enacted that each notice of assessment made upon the members of an association of this kind "shall truly state the cause and purpose of such assessment"; and counsel for plaintiff urges that the notice in question was ineffectual and invalid because it did not state the cause and purpose of the assessments in question. This particular section is part of a general law providing for the incorporation and regulation of these and similar associations, upon the co-operative or assessment plan, in this state (Laws 1885, c. 184); and section 3311 is of application to all such.

Whether it was designed to apply, or does apply, to associations organized under the laws of another state, as was this defendant, we need not decide, for certainly it was not intended to affect notices where the assessments could be for one cause only, and for but one single purpose, under the rules or laws of such associations. The statute was designed to cover notices of assessments made, as in some cases, for different causes or purposes, or in aid of distinct funds, so that members might be advised as to

the exact object in assessing. In this association the cause and purpose of every assessment was to establish or add to the benefit fund, all of which was to be used for the payment of death claims. Assessments were possible or permissible for this cause or purpose only, as every member knew. The "cause" of each assessment made was the condition of the benefit fund in defendant's treasury, out of which all death claims had to be paid, and out of which no other claims could be paid; and the "purpose" of each assessment was to replenish this fund in the only possible way, so that these claims might be paid. This was fully as obvious from the notice as if the exact cause and the precise purpose had been distinctly specified. See Smith v. Covenant, 16 Tex. Civ. App. 593; a writ of error being subsequently denied by the supreme court.

Judgment affirmed.

Appellant having asked for a reargument, the following order was entered on October 7, 1898:

PER CURIAM.

Ordered, that appellant's petition for reargument in the above-entitled action be granted in part.

The reargument shall be on briefs, and be confined to appellant's claim that the notice of assessment of date April 10, 1896, was insufficient, and also to respondent's contention that, if this be true, such notice was waived by the assured. Appellant to serve his brief upon respondent on or before October 25, 1898, and respondent to answer the same on or before November 15. Said briefs to be filed with the clerk of this court on November 18, 1898, on which date the case shall be submitted.

*Wm. H. Hallam* and *John W. Arctander*, for appellant.

Under the "laws" of respondent, members had one month from the date of notice within which to pay an assessment. The term "date of the notice" had, when these laws were enacted, a well settled legal meaning. It did not mean the date written or printed in the notice, but the date of its receipt, or at least the date when in the regular course of mail it would have been received. 2 Bacon, Ben. Soc. § 382; Protection v. Palmer, 81 Ill. 88; Northwestern v.

Schauss, 148 Ill. 304; National v. Miller, 85 Ky. 88; Mueller v. U. S., 51 Ill. App. 40. A notice requiring a member of an association like this to pay an assessment before it is due is invalid. 2 Bacon, Ben. Soc. § 379; U. S. v. Mueller, 151 Ill. 254; Warner v. National, 100 Mich. 157; Frey v. Wellington, 4 Ont. App. 293; Mutual v. Essender, 59 Md. 463; Hicks v. National, 60 Fed. 690; Haskins v. Kentucky, 7 Ky. Law Rep. 371; Molloy v. Supreme, 93 Iowa, 504. See also Boyd v. Cedar, 70 Iowa, 325; Marden v. Hotel, 85 Iowa, 584.

*Keith, Evans, Thompson & Fairchild,* for respondent.

After the reargument, on December 6, 1898, the court filed the following opinion:

COLLINS, J.

Although counsel for plaintiff asserted at the former hearing of this appeal that the notice for assessments 182 and 183, mailed to Mr. Bridges April 20, was void for the reason that it misstated the time within which the assessments must be paid, "and demanded payment * * * in twenty days, when the laws allow one month," our attention was not called to the wording of this notice, and we disposed of the point on the lines traced out in the brief and argument.

Upon rehearing we are compelled to hold that the notice was insufficient, and that a forfeiture of membership in defendant association cannot be predicated upon it. As before stated, the notice was furnished by the home office, and bore date April 10, 1896. It was received, with others, by the secretary of the local council at Minneapolis, in time to mail to Bridges on April 20. Under the "laws," notice of the assessment could be given by mail, and the member had one month from the date of the service within which to pay the assessment. The "date of the notice" in cases of this kind is not the date printed on the notice itself, but, when sent by mail, is the day of the date on which the notice is mailed, or is or should be received by the member in due and regular course of mail. In this case it is immaterial which. But see National v. Miller, 85 Ky. 88, 92, 2 S. W. 900; Northwestern v. Schauss, 148 Ill. 304, 310, 35 N. E. 747; 2 Bacon, Ben. Soc. § 382.

As the notice was mailed April 20, and was, or should have been,

received by Bridges on April 21, the one month within which he was required to pay must be computed from either the 20th or 21st of April. The notice sent required payment within one month from the printed date, and then, in large type, informed the recipient that the time for payment "expires May 10, 1896," and immediately following, in italics, that "You will stand suspended if not paid on or before that date." Both of these statements were false and misleading, for the month did not expire until May 20 or May 21, and the assured would not stand suspended until then. It was not the notice he was entitled to. It was no notice, and a nullity.

Forfeitures are not favored in the law, and the courts do not hesitate to seize hold of circumstances by means of which they can reasonably avoid so harsh a measure. And it must stand admitted that where an association of this character claims a forfeiture for nonpayment of an assessment it must show that the member was notified in the manner prescribed by the rules which govern the particular association. The notice positively demanded payment by May 10, and explicitly notified Bridges that if he failed to comply he would then stand suspended. It required of him to do that which, by his contract, he was not bound to do. It demanded payment of an assessment before it was due, and declared that suspension would be the result if the demand was ignored.

It is true that under defendant's "laws" the objectionable features contained in the notice were really surplusage,—statements which were not required,—but this fact cannot relieve it from the inevitable consequences. Nor can the fact that the assured could be reinstated within one month after suspension be taken into consideration when determining the effect of the notice actually sent. If it could be, the same fact might be considered in a case where there was an entire absence of notice. To hold that the notice was valid would be, to say the least, to place a construction on the contract of insurance, as well as on the notice, most favorable to a forfeiture; and that the law will not allow. U. S. v. Mueller, 151 Ill. 254, 261, 37 N. E. 882.

There are also a number of cases, cited by plaintiff's counsel, in which the same thing has been held as to notices of assessments in

73 M.—32

mutual associations given under statutory requirements. In principle there is no distinction between notices of this kind, given under a statute, and those given in pretended compliance with a rule of the association itself.

What is here held in regard to the validity of the notice is in opposition to the latter part of the opinion in Benedict v. Grand Lodge, 48 Minn. 471, 51 N. W. 371. To that extent the last-mentioned case is overruled.

, The result here is that the judgment appealed from is set aside, and a new trial ordered.