FERRENBACH v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court of Appeals, Eighth Circuit.   March 9, 1903.)

No. 1,768.

**1. LIFE INSURANCE—ASSESSMENTS—TIME FOR PAYMENT.**

An insurance certificate and the by-laws of the insurance association provided that proof of the mailing of a notice addressed to a member should be deemed and held to be conclusive proof "of due notice to said member" of an assessment. The certificate further provided that assessments should be payable "within thirty days from the date of each notice." *Held*, that the word "notice," as used in the latter clause, did not mean the printed paper mailed, but the information thereby conveyed to the insured, and that the 30 days were not to be computed from the date of the paper, nor the date on which it was mailed, but from the day on which it was, or should have been, received by the insured in due and regular course of mail.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

C. B. Williams (R. P. Williams, on the brief), for plaintiff in error.

James C. Jones (William C. Jones, Lon O. Hocker, and George Burnham, Jr., on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge.   This action was brought originally by Jacob Lambert against the Mutual Reserve Fund Life Association, a corporation organized under the laws of the state of New York. After the trial of the cause, and the rendition of a judgment therein in favor of the defendant, Jacob Lambert died, whereupon Thomas Ferrenbach, executor of his estate, was substituted as plaintiff in place of the deceased.   The action was brought to recover premiums amounting to $2,665.65 which Jacob Lambert paid during his lifetime to the defendant company as assessments or premiums upon a policy of insurance upon his life, which appears to have been issued by the defendant company to the deceased on April 5, 1883.   The premiums, as they were assessed and demanded, were regularly paid by the insured from that time forward until May 3, 1899, when an assessment or premium on the policy that was levied by the defendant company March 15, 1899, was tendered to the company's agent at the city of St. Louis, Mo., where the deceased resided, but was declined by the agent unless the insured submitted to another medical examination before the company's medical examiner, which examination he declined to undergo, and could not undergo, in fact, because he had become diseased, and was at the time over 70 years old; having taken out the policy in question at the age of 56.   The defendant company declined to accept the premium, amounting to $77.50, that was tendered by the deceased on May 3, 1899, because, as the company asserted, it was overdue, and should have been paid not later than May 1, 1899.   The deceased, on the other hand, insisted that he had the

¶ 1. See Insurance, vol. 28, Cent. Dig. §§ 1902, 1903.

right to pay the premium known as "Mortuary Call 103" on May 3, 1899; and because it was refused, and because, following such refusal of the premium, the policy was declared null and void and forfeited by the defendant company, he counted upon such conduct on its part, in the first count of his complaint, as a breach of the contract of insurance, which entitled him to recover the premiums that had been paid since the issuance of the policy.

The case hinges on the question whether the premium that was tendered on May 3, 1899, was tendered in time to avoid a forfeiture, and the undisputed facts upon which the decision of that question depends are these: The policy of insurance which was issued to the insured, in its opening paragraph, contains the following clause:

"All mortuary assessments payable at the office of the association within thirty days from the date of each notice."

The certificate further provides that:

"A notice addressed to a member at his post-office address as appearing upon the books of the association, according to its usual course of business, shall be deemed a sufficient notice, and proof of mailing the same, according to the usual course of business of said association, shall be deemed sufficient proof of compliance herewith on the part of said association."

A similar provision to the last is found in the constitution and by-laws of the company, which further provide that:

"An affidavit of or proof of addressing and mailing the same according to the usual course of business of said association, shall be taken and deemed as evidence, and shall be, constitute, and be deemed and held to be conclusive proof of due notice to said member and every person accepting or acquiring any interest thereunder."

The notice of the assessment or premium in controversy, which was levied, as above stated, on March 15, 1899, contained a statement that it was payable "within thirty days from the date of this notice." A notice of mortuary call No. 103, in the usual form, and containing the statement aforesaid, was by the defendant company deposited in the mail at the city of New York on March 31, 1899, postage prepaid. In due course of mail it reached the city of St. Louis, Mo., where the deceased resided, on April 2, 1899; but, as that day fell on Sunday, it was not delivered to the deceased in due course of mail until the following Monday morning, April 3, 1899. The deceased handed this notice to an agent of his who had charge of his business affairs, with directions to pay the assessment. This agent on May 1, 1899, went to an office building in the city of St. Louis where the defendant had prior to that time, and up to March 22, 1899, maintained its office, with the money necessary to pay the assessment, but found that the defendant company had changed its location. On May 3d, learning to what place the defendant company had removed its office, he went to that place on May 3d, and tendered the full amount of the assessment, to wit, $77.50; but the company's agent declined to accept the money, for the reasons stated heretofore, unless he would undergo another medical examination. Thereafter, as the plaintiff declined to undergo, and, on account of his physical condition, could not undergo, another medical examination, the company declared his policy, and all payments thereunder, forfeited.

It is contended in behalf of the defendant company, and that view was adopted by the lower court (resulting in a judgment in the defendant's favor), that the word "notice," as used in the certificate or policy and in the company's by-laws, means the printed paper by which knowledge of an assessment is communicated to the insured, and that the 30 days limited within which to make payments must be computed from the date given to or borne by that paper. On the other hand, the plaintiff contends that the word "notice" means knowledge or information communicated to the insured by means of the paper, and that the 30 days are to be computed from the time when, in due course of mail, such knowledge or notice comes to the insured. It is not claimed that, if the paper goes astray or is lost in the mail, the insured will not be affected with knowledge of the assessment until it arrives; but it is insisted that as the object is to give the insured knowledge of an assessment, and as the mere execution of a notice or the mere deposit of the same in the mail cannot impart knowledge, the agreement of the parties should be construed to be that the insured should be conclusively presumed to have knowledge of an assessment on such day as, in due course of mail, the notice of the assessment ought to come to hand, and that the 30-day period runs from that date. It will be observed, therefore, that, according to the company's theory, the premium in question was payable May 1, 1899, while, according to the plaintiff's theory, it was payable as late as May 3, 1899, because the notice arrived on April 3, 1899, and the computation, as he contends, should be made from that day, excluding April 3d, and including May 3d, according to the general rule for the computation of time.

The question presented is not novel, but has been decided by other courts. As early as the year 1887 it was held by the Court of Appeals for the state of Kentucky in National Mutual Benefit Ass'n v. Miller, 85 Ky. 88, 93, 2 S. W. 900, 901, that, where the charter of a mutual benefit society provided that "any member failing to pay his assessment within thirty days from the date of notice shall forfeit his membership, * * *" the time within which payment is to be made "is not to be computed from the actual date of the notice, or from the day it was mailed to the member, but, when sent by mail, from the time at which the notice would, in the regular course of mail, be received by the member." In the case of United States Mutual Accident Ass'n of the City of New York v. Mueller, 151 Ill. 254, 37 N. E. 882, 885, the Supreme Court of that state held, in the year 1894, that, although the by-laws of the order contained the provision that "payments are to be made * * * within thirty days from the date of the notice thereof," that meant from the date of the service of the notice, and not the date of the writing. And since this case was submitted our attention has been called to a very recent decision of the same court in the case of Cronin v. Supreme Council Royal League, 65 N. E. 323, wherein the same doctrine is reiterated, namely, that, where a by-law of a beneficial association provides that payment of assessments shall be made within 30 days of the date of the notice, a member is not in default until 30 days from the time notice is received. This rule of construction was also adopted and approved by

the Supreme Court of Minnesota in the year 1898 (Bridges v. National Union, 73 Minn. 486, 496, 76 N. W. 270, 409, 77 N. W. 411); that court saying:

"The 'date of the notice,' in cases of this kind, is not the date printed on the notice itself, but, when sent by mail, is the day of the date on which the notice is mailed, or is or should be received by the member in due and regular course of mail."

That court also held, following the general rule applicable to the construction of insurance policies, that, in placing a construction on such a provision, that construction should be adopted which is most favorable to the insured, and will avoid a forfeiture. Likewise, the Supreme Court of Louisiana, in the year 1871, in the case of Wetmore v. Mutual Aid & Benevolent Life Ass'n, 23 La. Ann. 770, held that where a provision of a policy issued by a benevolent association required members of the association to pay a small assessment within 30 days after the death of a member, being notified thereof by publication in one daily newspaper published in the city of New Orleans in English, German, and one in French, for five consecutive days, the 30-day period did not commence to run until the last day of the five publications. Mr. Bacon, in his work on Benefit Societies & Life Insurance (section 382) also states the doctrine thus:

"Where the laws of the society require that the assessment shall be paid within a certain number of days 'from the date of the notice' thereof, the date will be construed to mean the day it is delivered or received, and not the date written in the notice, or the day it is mailed; and, in computing the number of days, the day on which the notice is received will be excluded."

The adjudications aforesaid are ample to sustain the plaintiff's contention that the premium in question was tendered in time to avoid a forfeiture, although not tendered until May 3, 1899; and we feel the more inclined to follow these adjudications, and adopt the construction of the phrase "thirty days from the date of each notice" which has been adopted for several years by so many courts of last resort, since it will obviate a forfeiture, which courts always strive to prevent. It is a well-settled rule that, where doubts arise as to the proper construction of clauses in insurance contracts, that view of them should be adopted which is most favorable to the insured. It is most reasonable that these decisions should be followed in the case in hand, since the insured had paid premiums for many years on the policy in question, and, by reason of his advanced age and bodily infirmities, could not obtain other insurance when the alleged forfeiture occurred. The conduct of the defendant company in attempting to rid itself of the risk in the manner and under the circumstances disclosed by this record cannot be viewed otherwise than with disfavor, and the construction which it seeks to have placed on its policy and its by-laws to accomplish that end is accordingly rejected as contrary to law and opposed to fair business dealings, especially as between an insurer and an insured.

It was not seriously urged on the argument by counsel for the defendant company that if the company wrongfully refused to receive the premium which was tendered to it on May 3, 1899, it was not liable to the plaintiff in some amount on account of such wrong-

ful conduct. It was practically admitted on the argument that, if it wrongfully refused to receive the premium in question, it was liable. We fully concur in that view, but for what amount a recovery may be had—whether it be the amount of the premiums, as sued for in the first count of the petition, or the face of the policy, the insured being now dead—we are not called upon at this time to decide. No such question was considered by the trial court, because it held that the policy and all premiums paid thereon were lawfully forfeited, and that the plaintiff could not recover. It so directed the jury, and the verdict was rendered in accordance with that direction. This instruction was erroneous, and ought not to have been given.

The judgment of the lower court is accordingly reversed, and the case is remanded to that court for a new trial.

SANBORN, Circuit Judge (dissenting). The sole purpose of the judicial construction of a contract is to ascertain the intention with which the parties made it. These parties agreed that the mortuary assessments were payable "within thirty days from the date of each notice," and the sole question in this case is whether they intended, not by this stipulation alone, but by the entire contract, to agree that the assessment of April 1, 1899, should be payable within 30 days from the date upon the printed notice of it, which was mailed to the assured under the agreement, or within 30 days from the time when, in the ordinary course of the mail, the assured would have received this printed notice. The court below was of the opinion that the parties to this contract intended to agree that the assessment should be payable within 30 days from the date upon the printed notice, and the following considerations lead me to concur in the view taken by that court:

1. All the stipulations and parts of a contract must be read and considered together, to ascertain the true intention of the parties to it. That intention cannot be perceived by looking at a single stipulation alone. All the terms of the agreement must be taken in their ordinary, plain, and popular sense. Their natural, obvious meaning must be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of shrewd counsel would suggest. Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 452, 463, 14 Sup. Ct. 379, 38 L. Ed. 231; Fred J. Kiesel & Co. v. Sun Ins. Office of London, 88 Fed. 243, 246, 31 C. C. A. 515, 518; McGlother v. Provident Mutual Accident Ass'n, 89 Fed. 685, 687, 32 C. C. A. 318, 322; Delaware Ins. Co. v. Greer (C. C. A.) 120 Fed. 916. The by-laws of the defendant were a part of the contract. They provide that "on the first week day of the months of February, April, June, August, October and December of each year" an assessment shall be made upon all the members of the insurance company, and that "a failure to pay the assessment within 30 days from the first week day of February, April, June, August, October and December shall forfeit his membership in this association with all rights thereunder and the certificate of membership shall be null and void." The first week day of April, 1899, was April 1st, and under

this provision of the by-laws the time to pay the assessment made on that day expired on May 1, 1899—exactly 30 days after the date printed upon the notice which was mailed to the assured.

The by-laws further provide that "a notice addressed to a member at his post-office address as appearing upon the books of the association shall be deemed a sufficient notice," and that "an affidavit of or proof of addressing and mailing the same according to the usual course of business of said association, shall be taken and deemed as evidence, and shall be, constitute, and be deemed and held to be conclusive proof of due notice." The certificate or policy reads that "a notice addressed to a member at his post-office address as appearing upon the books of the association, according to its usual course of business, shall be deemed a sufficient notice," and that "in consideration of the statements, representations * * * and of all mortuary assessments payable at the office of the association within thirty days from the date of each notice," the association receives the assured as a member.

It is undeniable that the "notice addressed to the member," prescribed in the by-laws and in the certificate, is the printed paper on which the information regarding the assessment is inscribed, and not the information which that notice contains. Why should the word "notice," in the clause "thirty days from the date of each notice," have a different signification? The natural inference and presumption is that the parties used this word in the same sense the third time they put it into the contract that they had used it before. Why should the simple and obvious meaning of the term "date of each notice" in the contract be discarded, and the words "the time when in the ordinary course of the mail the member ought to receive the notice mailed to him," or words of similar import, be substituted for it? The word "date" is a word customarily used to describe the designation of time inscribed upon a written or printed paper. The word "time" is a word customarily used to describe the hour or day of the receipt of information. The date of a letter or of a notice is not the time of its receipt, or of its probable receipt. Nor is the time of a letter, if such an expression could be properly used, or the time of a receipt of a letter or of a notice, the date of the letter or notice. The words "time" and "date" are not interchangeable. The expression "thirty days from the date of each notice" is plain and clear. Its signification is obvious. It does not even suggest the meaning 30 days from the time when, in the ordinary course of the mail, the member ought to receive the notice, and it seems to me that such an ingenious and far-fetched interpretation ought not to be imported into it. It is confidently insisted, without fear of successful contradiction, that the plain, obvious meaning of the clause that the mortuary assessments shall be "payable within thirty days from the date of each notice," and the only meaning that would occur to 99 out of 100 persons who should either carefully or casually read this entire contract, would be that the assessments were payable within 30 days after the date upon the printed notice that was, by the terms of the by-laws and certificate, to be addressed to the mem-

Nor does this view rest upon mere opinion. The undisputed evidence in this case presents a conclusive demonstration that this is the obvious and the only natural meaning of the clause. The insurance company perceived this meaning, understood that this was the signification of the clause, and acted upon that understanding. From the inception of the contract, in 1883, until the default, in 1899, it dated all its notices on the days on which the assessments were made, and it inserted in each of them a statement that the assessment to which it related was "to be paid within thirty days from the date of this notice." The assured never conceived that the clause had any other signification. He understood that it meant that the assessments must be paid within 30 days after the dates printed upon the paper notices he received. Upon that understanding, he paid all his assessments within that time, except the one in controversy. He believed that the last day for the payment of this last assessment was 30 days after the date upon the printed notice of it which he received, and, in accordance with that understanding, he attempted to pay it upon that day, but failed. Even after he had failed, it never occurred to him that this contract could have the recondite and curious signification that is now ascribed to it. On the other hand, when, on May 3, 1899, the insurance company refused to accept his tender, and notified him that it was too late, he understood that this statement was true, and conceded that he had failed to pay the assessment in the time stipulated by his contract. He made a written application on that day for reinstatement under the by-laws of the company, in which he recited that his membership and policy had expired by reason of his nonpayment of the assessment of April 1, 1899. When his counsel came to read and study this contract to prepare their cause of action, it was as plain to them as to the parties to the contract that the agreement meant that the assessment must be paid within 30 days after the date upon the printed notice, or on May 1, 1899, for they wrote to the insurance company, under date of May 24, 1899, that "on the 1st of this month the assessment or premium of Jacob Lambert on policy No. 11,337 was due and payable." They did not claim that the agreement had the meaning they now seek to give it, but they based their claim on Lambert's attempt to pay on May 1st, his tender on May 3d, and a waiver of compliance with the terms of the policy by the company. Nor had the new light yet dawned upon them when they filed their amended petition on June 23, 1900, upon which this case went to trial, for they made no claim in that pleading that this assessment was not required by the contract to be paid within 30 days after the date upon the printed notice, but, on the other hand, expressly averred "that the bimonthly payment, mortuary call, or assessment due on or before thirty days after the 1st day of April, 1899, was offered to be paid and tendered by said plaintiff to defendant through its agent in the city of St. Louis, Missouri." It was not until some time after the pleadings had been closed that the ingenuity and research of counsel discovered that this contract might have some other signification than the obvious meaning which it bears upon its face, and which the parties to it had always understood it to have.

Now, the real question in this case is, what did the parties to this

agreement intend when they made their contract? Upon what signification of this clause did their minds meet in 1883, when they executed it? It cannot be that they met upon a meaning so recondite and ingenious that it never occurred to either of them or to their counsel until after the pleadings in this case had been closed, more than 16 years after the agreement was made. It must be that they met upon the plain, ordinary, popular, and obvious sense of the words of the contract; upon the signification which the writings and acts of the parties conclusively show they adopted and acted upon for more than 16 years after the contract was signed; upon the meaning that the assessments were payable within 30 days after the date inscribed upon the printed notice addressed to the assured.

2. Where a contract is susceptible of two constructions—one which makes the different parts of it accordant, and another which makes them discordant—the former must be given, because it cannot be assumed that the parties intended to insert inconsistent provisions. Miller v. Hannibal & St. J. R. Co., 90 N. Y. 430, 433, 43 Am. Rep. 179; Barhydt v. Ellis, 45 N. Y. 107, 110; Burdon Sugar Refin. Co. v. Payne, 167 U. S. 127, 142, 17 Sup. Ct. 754, 42 L. Ed. 105. By the terms of the by-law which has been quoted, the assessment of April 1, 1899, was payable on or before 30 days from the first week day of that month, and that time expired on May 1, 1899. The notice of this assessment addressed to the member under the by-laws and the certificate was dated on April 1, 1899. The construction that the clause in the certificate, "thirty days from the date of each notice," means ·30 days from the date on the printed notice, which was adopted by the court below, makes this clause consistent with the express provisions of the by-laws, because the first week day in April was April 1st and the date of the notice was April 1, 1899. On the other hand, the interpretation given to it by the majority of this court brings this clause into unnecessary conflict with the by-laws, and makes the assessment payable at one time by the terms of the by-law, and at another by the terms of this clause of the certificate. Why should the obvious sense of the clause, which makes all the stipulations of the by-laws and certificate harmonious and certain, be discarded for the purpose of importing into the contract a curious and recondite meaning, which makes its stipulations contradictory and its meaning doubtful?

3. The meaning which the parties themselves adopted and understood to be the sense of their agreement is the actual contract of the parties, for this is the signification upon which the minds of the parties meet. In the interpretation of an agreement, a court ought not to depart from the signification which the parties themselves adopted and acted upon before any controversy arose. "If it leaves the parties to be governed by their understanding of their own language, .it, in effect, enforces the contract as actually made. That they should be so permitted to construe their own agreement accords with every principle of reason and justice." St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 121, 128; Housekeeper Pub. Co. v. Swift, 38 C. C. A. 187, 193, 97 Fed. 290, 296; Schofield v. Bank, 38 C. C. A. 179, 182, 97 Fed. 282, 286; Topliff v. Topliff, 122 U. S. 121, 131, 7 Sup. Ct.

1057, 30 L. Ed. 1110; Chicago v. Sheldon, 9 Wall. 50, 54, 19 L. Ed. 594. The parties to this contract understood, acted, wrote, and pleaded for more than 16 years with the understanding that the clause in the certificate that mortuary assessments should be payable "within thirty days from the date of each notice" meant that they were payable within 30 days from the date printed on the paper notice addressed to the members under the by-laws and the certificate. Since this was the signification upon which their minds met when they made their agreement, and upon which they continued in unison until some time after the pleadings in this action were closed, this was the actual contract between them. The meaning of the parties to written agreements must be ascertained by the tenor of the entire writing, and not by looking at a part of it. Boardman v. Reed, 6 Pet. 328, 8 L. Ed. 415. The terms of an agreement are to be construed in the plain, obvious, and popular sense. Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 463, 14 Sup. Ct. 379, 38 L. Ed. 231. A construction which makes the stipulations of a contract harmonious must be, if possible, given the preference over one which makes them contradictory. Miller v. Hannibal & St. J. R. Co., 90 N. Y. 433, 43 Am. Rep. 179. The sense in which the parties understood their contract when they made and were acting under it is the actual agreement between them, because it was upon that signification that the minds of the parties met. St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 128. Because, when the entire agreement is read and considered together, the obvious, popular sense and meaning of the clause, "within thirty days from the date of each notice," in this certificate, seems to me to be "within thirty days after the date upon each printed notice," while the meaning, "within thirty days from the time when, in the ordinary course of the mail, each printed notice ought to be received by the member," seems to be hidden, curious, and unsuggested by either a casual reading or an ordinary study of the clause, because the former interpretation makes all the provisions of the contract harmonious and consistent, while the latter makes them inconsistent and contradictory, and imports into the contract doubts and uncertainties which do not exist if its terms are given their ordinary and obvious meaning, and because the parties to the agreement themselves understood this clause in the former sense, made the contract, wrote, acted, and pleaded under it, with that understanding, for 16 years, so that this signification was the meaning, and the only meaning, upon which their minds actually met, the conclusion seems to me to be unavoidable that the court below was right in adopting this construction.

The opinion of the majority rests upon the decisions of state courts in National Mutual Benefit Ass'n v. Miller, 85 Ky. 88, 93, 2 S. W. 900; U. S. Mutual Accident Ass'n v. Mueller, 151 Ill. 254, 37 N. E. 882; Cronin v. Supreme Council Royal League (Ill.) 65 N. E. 323; Bridges v. National Union, 73 Minn. 486, 496, 76 N. W. 270, 409, 77 N. W. 411; and Wetmore v. Mutual Aid & Benevolent Ass'n, 23 La. Ann. 770; and a statement based upon these decisions in Bacon on Benefit Societies & Life Insurance, § 382. But even if these authorities were in point in the case in hand, they would be

persuasive, only, not authoritative; and the construction given to this agreement by the majority is so abhorrent to my mind, and seems to me to be so violative of the ordinary canons of construction, that nothing less than a decision of the Supreme Court, to which we are all bound to yield assent, would seem to me to make it my duty to surrender the free exercise of my reason and judgment upon this question. It is a question of general law. The decisions of state courts, though persuasive, are not controlling in the national courts upon such a question. When a controversy over the construction of their contract arises between citizens of different states, Congress has, in its wisdom, granted to them the right to a decision of that controversy by the national courts. The very purpose of this grant was to enable the parties to secure an original investigation of the questions which the controversy presents by a federal court, and to obtain its independent judgment upon them. When the judges of the national courts fail to form independent opinions and to exercise their own judgments upon such questions, and merely follow the decisions of the state courts, the grant of jurisdiction to the national courts will have ceased to accomplish the purpose for which it was enacted. City of Ottumwa v. City Water Supply Co. (C. C. A.) 119 Fed. 315, 325; Casserleigh v. Wood, Id. 308. When the parties to this action invoked the decision of this court upon the questions relating to the construction of their agreement, the acts of Congress gave them the right to its independent judgment and opinion, uncontrolled by the opinions of state courts, and uninfluenced by them, save as the reason, logic, and arguments they contain, and the deference always due to the opinions of judges learned in the law, may persuade. A careful reading of the opinions cited by the majority has failed to satisfy my mind that the interpretation of this contract adopted by the trial court was erroneous. There are at least two reasons why the authorities cited in the opinion of the majority are not persuasive. The first is that the controlling facts in the case at bar differ so essentially from the facts in those cases that, even if those decisions are right, they are inapplicable to the question which the court below was compelled to decide. Not one of the decisions in those cases was conditioned by either of two controlling facts which exist in this case, and which are in themselves determinative of the construction of this contract, to wit, the fact that the by-law which has been quoted contained an express stipulation that the assessment should be paid within 30 days from the first week day of April, which was exactly 30 days from the date upon the printed notice, thus clearly indicating that the meaning of the parties when they used the clause "within thirty days from the date of each notice" was within 30 days from the date upon each printed notice, and making any other construction a source of repugnancy between stipulations otherwise harmonious, and of doubt and uncertainty in a contract otherwise plain and consistent, and the fact that the parties to the agreement, when they made it, and for 16 years thereafter, understood that the meaning of this clause was that the assessments were payable within 30 days after the date upon each printed notice, and wrote, acted, and pleaded upon that understand-

ing. Another reason why the opinions in those cases are not persuasive is that they contain no reason, argument, or discussion which convinces that the natural meaning of this clause ought to be discarded, even in the absence of the two controlling facts which have just been mentioned. The decisions of the state courts upon that single question are not uniform. The Supreme Court of Maryland in Yoe v. B. C. Howard M. A. Ass'n, 63 Md. 86, holds that, under a clause similar to that under consideration here, the assessment was payable within 30 days after the date upon the printed notice.

In view of the obvious meaning of the plain terms of the contract, the express stipulation of the by-law, which is inconsistent with any other construction, and the proved understanding of the parties themselves, there seems to me to be no escape from the conclusion that the court below gave the proper interpretation to this contract when it held that under it the assessment was payable on or before 30 days after the date upon the printed notice which was addressed to the member in accordance with the terms of the by-laws and the certificate; and for this reason the judgment should, in my opinion, be affirmed.

There is another reason why it ought to be affirmed, even if the construction given to the clause of the contract under consideration by the majority is right. If the word "notice" in that clause means information, and not a paper notice, the assured received that information, according to the terms of his contract, on March 31, 1899. The 30 days thereafter expired on April 30, 1899, so that his tender of payment on May 3, 1899, was too late. The printed notice was mailed to the assured on March 31, 1899. The agreement of the parties was that a notice addressed to the assured at his post-office address should be deemed a sufficient notice, and that proof of addressing and mailing it should be conclusive proof of due notice. Under this agreement, the mailing is due notice or due information, and the notice is complete, or the information is given, when the paper notice is mailed. The parties had the right to agree that the mailing of the paper notice should be due notice or due information, and, as they did so agree, the mailing completed the notice. Ross v. Hawkeye Ins. Co., 83 Iowa, 586, 588, 589, 50 N. W. 47; Epstein v. Mut. Aid, etc., Ass'n, 28 La. Ann. 938; Survick v. Valley Mutual Life Ass'n (Va.) 23 S. E. 223; Reichenbach v. Ellerbe, 115 Mo. 588, 596, 22 S. W. 573; Hannum v. Waddill, 135 Mo. 153, 159, 36 S. W. 616; Forse v. Supreme Lodge Knights of Honor, 41 Mo. App. 106, 116; Borgraefe v. Knights of Honor, 22 Mo. App. 127, 141; Bacon on Benefit Societies and Life Insurance, § 381.